**ALDINE INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Beth BATY d/b/a The Office Extension, Appellee.**

No. 14–98–00712–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 29, 1999.

**114**

Jeffrey J. Horner, Jonathan C. Hantke, Philip Delbert Fraissinet, Houston, for appellants.

Brian Lee Reade, Woodlands, for appellees.

Panel consists of Justices ANDERSON, HUDSON and DRAUGHN.*

---

* Senior Justice Joe L. Draughn sitting by assignment.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from an order awarding sanctions in an ad valorem tax case. Aldine Independent School District (AISD) claims the district court abused its discretion in ordering sanctions. We reverse the sanctions order and render judgment for AISD.

### Background

In November 1988, Harris County Appraisal District (HCAD) visited appellee Beth Baty's business premises in order to appraise it for tax purposes. Because HCAD was not able to inspect the property, it estimated the appraised value based on what could be seen. Although she could have, Baty never filed a protest of the valuation. Taxing units rely on HCAD's appraised value to set tax rates and levy taxes. AISD relied on the appraisal and assessed Baty's taxes. Baty did not pay the taxes. Subsequently, AISD filed suit against Baty to collect delinquent personal property taxes. In a hearing before a Harris County Tax Master, Baty contested HCAD's appraised value of her property for the first time. The Tax Master reduced the appraised value and ordered her to pay the delinquent taxes on the smaller amount. AISD appealed the Tax Master's decision to the 190th District Court. The trial court held a new trial on March 27, 1995 at the conclusion of which the trial court orally imposed sanctions against AISD. The court's final judgment contained a finding that "the Plaintiff's Notice of Appeal of the Tax Master's Report in this cause of action was groundless and brought in bad faith," and ordered each appellant[1] to pay $2,650.00 in sanctions to Baty. AISD appealed the sanctions portion of the order

---

1. In the first appeal, the City of Houston joined AISD as an appellant. The City of Houston, however, is not an appellant in this second appeal.

to this court. *See Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851 (Tex.App.—Houston [14 th Dist.] 1997, writ denied). In that appeal, we reviewed the record and determined that the trial court spontaneously ordered sanctions on its own motion without providing either notice or a hearing to appellants. *Id.* at 853. This court held that the trial court abused its discretion by failing to follow the requirements of Rule 13, reversed the sanctions award and remanded the cause to allow the trial court to conduct an evidentiary hearing on the Rule 13 sanctions. *Id.*

Upon remand, the trial court held the hearing required by this court regarding the imposition of sanctions. At the conclusion of that hearing, the trial court made the following statement:

> [T]he taxing authorities ... clearly abused in my view and from what the evidence showed in the earlier proceeding, that they cannot—frankly, that there was absolutely no due diligence done to discover what the truth was, what—how much property was there. This whole process was based on a guess. And, again, that's what offended the Court.
>
> Now, again, I'm going to take judicial notice of the file and the earlier proceeding conducted on March 27 th, 1995, and will make a finding that the case was groundless, brought in bad faith and brought for purposes of harassment and will assess attorney's fees in the amount of $2,600 against the taxing authorities to be broken down $1,300 a piece and that is based on your notion and, indeed, correctly so, the authority was entitled to appeal that.
>
> And it's also within the discretion of this Court to look at that proceeding, to look at the fact of what you're asking this Court to do was assess a taxable amount of property—or to find and to concur with this flawed process that

there were 800–and–some–thousand dollars worth of computers in this woman's office when, in fact there were three, 286 computers.

The Court isn't going along with it. And I know because I believe that it cannot be within the spirit of the law to make that kind of injustice, and I'm not going to go along with it.

After that hearing the trial court signed a. new order dated December 22, 1997 in which the court stated it was of the opinion that the appeal from the Tax Master's decision to the district court was groundless, brought in bad faith, and brought for the purpose of harassment.[2] AISD again appeals the trial court's imposition of sanctions.

### Standard of Review

The trial court's imposition of rule 13 sanctions is within its discretion. *See Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex.App.—Dallas 1994, writ denied). We set aside that decision only upon a showing of clear abuse of discretion. *See Stites v. Gillum*, 872 S.W.2d 786, 788 (Tex.App.—Fort Worth 1994, writ denied). In deciding whether the trial court abused its discretion, we determine whether the trial court's act was arbitrary or unreasonable. *Id.* A trial court abuses its discretion in imposing sanctions only if it based its order on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Monroe*, 884 S.W.2d at 816. In reviewing the trial court's action in granting or denying sanctions, we ordinarily look to its statement of good cause for imposing sanctions in its order. *Id.*

### New Trial Before The District Court

During AISD's new trial of the Tax Master's ruling before the District Court, it introduced evidence to establish a prima facie case for judgment against Baty in the

---

**2.** The December 22, 1997 "Order For Sanctions" indicates that sanctions were imposed by the trial court sua sponte.

amount of delinquent taxes. *See General Elec. Capital Corp. v. Corpus Christi,* 850 S.W.2d 596, 600 (Tex.App.—Corpus Christi 1993, writ denied) (holding that where taxing authorities introduced delinquent tax rolls which established that taxes on property owned by the defendant were assessed and unpaid, prima facie case for judgment for the unpaid taxes was established). In addition, AISD introduced the Personal Property Field Document for Baty's account with HCAD which reflected the following property was located at Baty's place of business: "Inventory, Furniture & Fixtures," and "Machinery & Equipment." It was then incumbent upon Baty to introduce evidence sufficient to prove a defense: either that she did not own the property or that the property was not located in the taxing district on January 1 of the tax year. *See* TEX. TAX CODE ANN. § 42.09(b)(1), (2) (Vernon 1992).

Baty was called as the first witness by AISD. When asked about her affirmative defense of non-ownership as to property at her business on January 1, 1989, 1990 and 1991, she answered "I did not own any of the property which you maintained I owned." A few minutes later when Baty was asked if she believed her property has been misappraised, she responded as follows: "I dont't know which property they appraised, but it wasn't mine. I had about $5,000 worth of personal property in that unit. I never had close to a million."

Baty was operating the business as a partnership with her mother, Lynn Joseph. When asked about the ownership of the property at the business location, and specifically whether any of the property was either not owned by her or Baty or was not being used for business purposes there, she replied, "Not that I know of, no."

Moreover, during the trial Baty also made numerous attacks on the HCAD appraised value of the property located within Baty's business location, beginning with her counsel's opening statement in which he stated, among other matters, "We're

arguing over the value of tables and chairs, is totally out of place." Baty also testified that she disagreed with the appraised values placed on her property for the three tax years, and that she tried to get the values reduced, but she never filed a formal protest as to the appraised values. She admitted she should have filed the protest, but "just put her head in the sand" when the process of dealing with the tax authorities became too difficult. She testified that she knew the values for 1989 and 1990 were wrong, she should have followed through on it and should have hired an attorney, but she just didn't have the strength for that effort.

At one point during the trial, Baty was asked about the total value of all of her equipment at her business location during the years 1989, 1990, and 1991. Her response, which addressed all of the categories of property identified by HCAD as being located at her business, was as follows:

> I had to do lists for my insurance, and all that, so I know what the value is. I had an—I had to list everything out for the insurance company. I knew what I paid for it, I knew what I depreciated it at, it was around $5,000.

> Almost all the furniture we bought were [sic] used computers, desks for $50. The most expensive that we had was a copy machine which was under lease, which wasn't our property anyway, that was just under lease. It was about—the value of the property was about $5,000, you know, give or take $1,000 back in '89.

## Rule 13

■■■ Courts should presume parties and their counsel file all papers in good faith, and the party seeking sanctions must overcome that presumption. *See* TEX.R. CIV. P. 13. Rule 13 requires the trial court to base sanctions on the acts or omissions of the represented party or counsel. A trial court may not base Rule 13 sanctions

on the legal merit of a pleading or motion. *See Monroe,* 884 S.W.2d at 817. The trial court measures a party's or counsel's conduct when he signs the pleading, motion or other paper. *See id.* There must have been a reasonable inquiry, which means the amount of examination that is reasonable under the circumstances. *See id.* The threshold inquiry is whether pleadings, motions or other papers that were filed were groundless. *See id.* The issue of bad faith is not reached until the trial court first determines that the claims brought by the party to be sanctioned are groundless. See TEX.R. CIV. P. 13. "Groundless" means without basis in law or fact and not warranted by good faith argument for an extension, modification, or reversal of existing law. *See Laub v. Pesikoff,* 979 S.W.2d 686, 693 (Tex.App.—Houston [1 st Dist.] 1998, pet. denied). Therefore, if AISD's appeal to the district court was not groundless, then we need not reach the issue of bad faith or harassment.

### Exclusive Remedies

In four points of error, AISD asserts that the trial court abused its discretion in sanctioning AISD for seeking review of the Tax Master's recommendations. In its new trial before the trial court, AISD argued that Baty had waived her complaint as to the validity of the appraised value of her property because she failed to exhaust the administrative remedies provided in the Tax Code. The Tax Code provides that a property owner is entitled to protest his property's appraised value before the appraisal review board. *See* TEX. TAX CODE ANN. § 41.41(1) (Vernon 1992). A property owner must file his written protest before June 1 of the tax year or within thirty days of receipt of the appraisal. *See id.* § 41.44(a). A property owner who is dissatisfied with the board's decision may petition for review in district court under

chapter 42 within forty-five days of notification of the review board's decision. *See id.* § 42.21. Exact compliance with the procedures of chapters 41 and 42, within the prescribed time periods, is mandatory before a property owner can maintain a challenge to a property tax appraisal in district court. *See id.* § 42.09. Baty's appellate brief before this court states "There is no disagreement that Baty did not avail herself of the administrative remedies provided by the Tax Code to challenge appraised values."

### Waiver

Failure to exhaust administrative remedies is fatal to a property owner's defense in the district court to the taxing authority's prima facie case for judgment in the amount of the delinquent tax. Section 42.09 of the Tax Code provides that the remedies provided in the Code for protest are exclusive. Failure to exhaust those avenues results in a deprivation of the right to raise any defense against a suit to enforce collection of delinquent taxes. *See Robstown Indep. Sch. Dist. v. Anderson,* 706 S.W.2d 952, 953 (Tex.1986). In *Robstown,* the court held that where a property owner fails to comply with the administrative procedure of protest, she is precluded from raising non-ownership in defense to a suit to enforce collection of delinquent taxes. *See id.* Here, Baty acknowledges she failed to exhaust the administrative remedies provided in the Tax Code.[3] The two defenses she raised before the Tax Master and the district court were incorrect appraised value of her property and non-ownership of certain equipment—the leased copier. Section 42.09(b) lists the two permissible defenses to a suit to collect a delinquent property tax, and improper appraised value is not one of the two listed defenses. Accordingly, Baty was prevented from questioning the valua-

---

**3.** The doctrine of exhaustion of remedies directs that when the legislature has provided a person administrative remedies for action of an agency that aggrieves him, that person must first exhaust those remedies before raising the claims in court. *See Dallas County Appraisal Dist. v. Lal,* 701 S.W.2d 44, 46 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

tion of her property assigned by HCAD in a suit to collect a delinquent property tax.

 In addition, because Baty failed to raise the defense of non-ownership at the administrative level, she waived that defense for the three tax years for which AISD brought suit. *See id.* (holding property owner waived defense of non-ownership by failing to comply with administrative procedure of protest). Where a property owner fails to avail himself of the exclusive remedies provided by the Tax Code in a timely and proper fashion, he has waived his remedies and cannot further dispute his tax liability. *See Sierra Stage Coaches, Inc. v. La Porte Indep. Sch. Dist.,* 832 S.W.2d 191, 193 (Tex.App.—Houston [14th Dist.] 1992, no writ). Thus, Baty was unable to rebut the prima facie case established by AISD for judgment in the amount of the delinquent taxes she owed.

### Conclusion

 The trial court's December 22, 1997, judgment imposing sanctions stated that the appeal was groundless and brought in bad faith and for the purpose of harassment. As noted above, the first issue to be addressed is the question of whether the appeal was groundless. If it was not, then issues of whether or not the appeal was brought in bad faith or for harassment purposes are irrelevant. Here, the Tax Master found the value of Baty's personal property to be $5,500 for the three tax years in question. Because Baty admittedly had not exhausted her administrative remedies prior to the time she became a defendant in the tax collection suit heard by the Tax Master, she was, under *Robstown* and *Sierra Stage Coaches,* precluded from asserting any defense in that suit. Thus, AISD quite properly recognized that the Tax Master had improperly reached a decision based on defenses that had been waived, and sought to have that error corrected by the district court based on the Tax Code and Texas Supreme Court interpretations thereof.

AISD was on firm ground when it sought a new trial in the district court because it had a "basis in law" for the new trial request as required by Rule 13. A trial court may not impose sanctions, as here, based on an erroneous view of the law. Accordingly, we hold that it was clear error for the trial court to impose sanctions on AISD when its new trial request was firmly founded on the law.

Therefore, we reverse the trial court's sanctions award against AISD and render judgment that no sanctions be imposed on AISD.