TEXAS–OHIO GAS, INC., Appellant,

v.

John MECOM, III and Robert
Giles, Appellees.

No. 06–99–00104–CV.

Court of Appeals of Texas,
Texarkana.

Submitted July 11, 2000.

Decided Aug. 23, 2000.

Michael J. Stanley, Pam Rea, Beirne, Maynard & Parsons, LLP, Houston, for appellant.

Curt M. Langley, Kristin L. Bauer, Davis, Oretsky & Guilfoyle, PC, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice GRANT.

This appeal arises out of a contractual agreement between Texas–Ohio Gas, Inc. and Olympic Gas Marketing for the sale of natural gas. Texas–Ohio brought suit against John W. Mecom, III, Robert N. Giles, and six other individuals, all of whom were employees and/or shareholders of Olympic Gas Marketing and its related entities (the Olympic entities). Texas–Ohio alleged that Mecom, Giles, and the other defendants were involved in a conspiracy that fraudulently induced Texas–Ohio to sell over $700,000 worth of natural gas to Olympic Gas Marketing, an insolvent entity. The trial court dismissed with prejudice all claims against Mecom and Giles without specifying the grounds for the dismissal. On appeal, Texas–Ohio challenges the trial court's orders of dismissal and makes the following contentions:

(1) the trial court erred in dismissing Texas–Ohio's claims as a Rule 13 sanction because the trial court failed to recite in the dismissal orders the particulars for good cause justifying a Rule 13 sanction;

(2) the trial court erred in dismissing Texas–Ohio's claims as a Rule 13 sanction because there was insufficient evidence that the petition was groundless and filed in bad faith or for the purpose of harassment;

(3) the trial court erred in dismissing Texas–Ohio's claims on the pleadings for failure to state a cause of action; and

(4) The trial court's dismissal orders cannot properly be construed as orders for summary judgment.

In cross-points, Mecom and Giles make the following contentions:

(1) Texas–Ohio's deemed admissions resolve the justiciable case and controversy between the parties, and thereby deprive the courts of subject matter jurisdiction;

(2) Texas–Ohio's claims are subject to the automatic stay provisions of the Bankruptcy Code, and;

(3) sanctions should be imposed on Texas–Ohio for making misleading statements in its brief before this Court.

## I. FACTUAL BACKGROUND

From March 1996 through October 1996, Texas–Ohio sold natural gas to GM Hydrocarbons pursuant to a contractual agreement and was duly paid. At that time, John Mecom, III was the president of GM Hydrocarbons, Robert Giles was the vice-president, and David Geick was a manager. In October 1996, the parent company of the Olympic entities, Olympic Energy Corporation (OEC), *acquired* GM Hydrocarbons and assumed its contractual obligations. Pursuant to the acquisition, Mecom and Giles became shareholders of OEC, and Mecom, Giles, and Geick all became employees of the Olympic entities.

According to Texas–Ohio, on or about November 1996, Geick falsely represented to Texas–Ohio that GM Hydrocarbons had been *merged* into Olympic Gas Marketing (OGM). Based on this representation, Texas–Ohio was allegedly led to believe that, in doing business with OGM, it would be doing business with a new and larger corporation. In fact, there was no merger. GM Hydrocarbons became wholly owned by OEC, but it continued operating as a separate entity and allegedly continued trading natural gas in its own name. OGM was wholly owned by Olympic Natural Gas (ONG), which in turn was wholly

owned by OEC.[1] Thus, GM Hydrocarbons and OGM were separate entities that were both ultimately wholly owned by OEC. There was no merger, and OGM never owned the assets of GM Hydrocarbons. Indeed, Texas–Ohio contends that OGM was nothing more than an insolvent shell.[2]

According to Texas–Ohio, once Geick had misrepresented that a merger had taken place, OGM and its related entities were allowed to take advantage of the credit relationship GM Hydrocarbons had established with Texas–Ohio. Over a short period of time, the Olympic entities purchased large quantities of natural gas from Texas–Ohio on credit. From November 1996 through February 1997, OGM and its related entities purchased $1,101,618 worth of natural gas from Texas–Ohio. As representatives of OGM, Mecom and Giles signed written confirmations for some of these purchases. The Olympic entities failed to pay for the natural gas in breach of their contractual obligations.[3] And, on June 7, 1997, the Olympic entities entered Chapter 7 bankruptcy proceedings.[4]

In November 1997, Texas–Ohio filed this lawsuit against Mecom, Giles, and six other employees and/or shareholders of the Olympic entities alleging fraud, fraudulent inducement, negligent misrepresentation, and tortious interference with a contract. Texas–Ohio's claims were generally based on its allegation that the defendants participated individually and as co-conspirators in a fraudulent scheme that induced Texas–Ohio to sell natural gas to the Olympic entities, which the defendants knew to be insolvent. Within two months after this lawsuit was filed, Mecom and Giles filed identical motions to dismiss. The record does not reflect whether a hearing was held on the motions to dismiss,[5] but no reporter's record of any such hearing has been filed in this appeal. On July 7, 1998, the trial court dismissed with prejudice all claims against Mecom and Giles without specifying the grounds for dismissal. Texas–Ohio filed a motion to reconsider, and a hearing was held on the matter on September 18, 1998. On April 6, 1999, the trial court ordered a severance of all claims against Mecom and Giles and entered final judgment pursuant to the earlier dismissal orders.

On appeal before this Court, Texas–Ohio contends that the trial court committed reversible error in ordering the dismissal of its claims; Mecom and Giles contend that the trial court could have properly dismissed the claims as a Rule 13 sanction on the basis of defective pleadings, or as a summary judgment. Because the trial court failed to specify the grounds for dismissal, we must determine whether dismissal was proper on any of the grounds asserted by Mecom and Giles.

---

1. In July 1996, Olympic Gas Marketing (OGM) merged into Olympic Natural Gas (ONG). Thus, OGM did not exist as a separate entity at the time the alleged misrepresentation was made by Geick in November 1996. During that time, it appears that the existing Olympic entities were doing business as OGM. In December 1996, OGM was again incorporated as a separate corporate entity. Thereafter, OGM was wholly owned by ONG, and in turn, ONG was wholly owned by OEC.

2. A co-defendant's deposition testimony reflects that OGM had only $1,000 in capital and all of its assets were encumbered.

3. In 1997, the Olympic entities paid $165,000 in cash payment and renegotiated the payment terms, thereby reducing the monies owed from $1,101,618 to $716,618.

4. Throughout the litigation of this case, Texas–Ohio has stated and continues to state that the Olympic entities were placed in *voluntary* bankruptcy. However, Mecom and Giles have maintained that the bankruptcy was *involuntary*, and they have asked us to take judicial notice of a petition for involuntary bankruptcy which is not in the record. Because it is not a deciding factor in the issues before us, we decline to take judicial notice of the petition.

5. In its initial appellate brief, Texas–Ohio stated that a hearing was held on the motions to dismiss on April 18, 1998. However, in its reply brief, Texas–Ohio stated that there was no evidentiary hearing held on the motion. Mecom and Giles do not address this issue.

## II. RULE 13 SANCTIONS

We begin our analysis by considering whether it would have been proper for the trial court to have dismissed Texas–Ohio's claims as a sanction under Rule 13 of the Texas Rules of Civil Procedure. Texas–Ohio contends that dismissal as a Rule 13 sanction would have been improper (a) because the dismissal orders did not recite the particulars for good cause justifying a Rule 13 sanction, and also (b) because Mecom and Giles failed to prove that the claims were groundless and filed either in bad faith or for the purpose of harassment.

▇▇▇ The imposition of Rule 13 sanctions is within the discretion of the trial court; thus, we set aside its decision only on a showing of a clear abuse of discretion. *See GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993); *Stewart v. Transit Mix Concrete & Materials Co.,* 988 S.W.2d 252, 257–58 (Tex. App.-Texarkana 1998, pet. denied). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Stewart,* 988 S.W.2d at 257–58.

### A. Particularized Findings under Rule 13

▇▇▇ Rule 13 of the Texas Rules of Civil Procedure clearly states, "No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order." Tex.R. Civ. P. 13. Trial courts are not at liberty to ignore the clear and unambiguous language of this rule. When imposing Rule 13 sanctions, the trial court is required to make particularized findings of good cause justifying the sanctions. Failure to comply with this clear directive

is an abuse of discretion. *Tarrant County v. Chancey,* 942 S.W.2d 151, 155–56 (Tex. App.-Fort Worth 1997, no writ); *Friedman and Assocs., P.C. v. Beltline Road, Ltd.,* 861 S.W.2d 1, 3 (Tex.App.-Dallas 1993, writ dism'd by agr.); *Zarsky v. Zurich Management, Inc.,* 829 S.W.2d 398 (Tex.App.-Houston [14th Dist.] 1992, no writ); *GTE Communications Sys. Corp. v. Curry,* 819 S.W.2d 652, 653–54 (Tex.App.-San Antonio 1991, no writ); *Kahn v. Garcia,* 816 S.W.2d 131 (Tex.App.-Houston [1st Dist.] 1991, no writ). Therefore, in the present case, it would have been an abuse of discretion for the trial court to enter Rule 13 sanction orders dismissing Texas–Ohio's claims without setting out the findings of good cause justifying the sanctions.

▇▇▇ However, Texas–Ohio waived this error by failing to timely object to the form of the orders. Generally, to preserve error for appeal, a party must timely present its objection to the trial court with sufficient specificity. *See* Tex.R.App. P. 33. Texas–Ohio made no objection to the trial court concerning the lack of particularized findings in the sanctions orders.[6]

Texas–Ohio has cited several cases for the proposition that the trial court's non-compliance with the particularity requirement of Rule 13 will render a sanction order unenforceable. Yet, none of the cases cited by Texas–Ohio hold that this type of error by the trial court cannot be waived. *See Murphy v. Friendswood Dev. Co.,* 965 S.W.2d 708 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *Zarsky,* 829 S.W.2d at 398–400; *Kahn,* 816 S.W.2d at 131–34; *Watkins v. Pearson,* 795 S.W.2d 257 (Tex.App.-Houston [14th Dist.] 1990, writ denied). In fact, the appellate courts that have specifically addressed the issue of waiver have consistently held that a

---

6. In its reply brief, Texas–Ohio stated that it objected to the trial court about the lack of particularized findings of good cause. Texas–Ohio further suggested that it preserved error on this point in both its motion for reconsideration and its motion for new trial. However, after carefully reviewing the record, we find that Texas–Ohio has misrepresented the record. We find nothing in the record to indicate that Texas–Ohio ever raised this issue in the trial court.

complaining party may waive the particularity requirement of Rule 13 by failing to make a timely complaint. *Alexander v. Alexander,* 956 S.W.2d 712 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *Land v. AT & S Transp., Inc.,* 947 S.W.2d 665 (Tex.App.-Austin 1997, no writ); *Campos v. Ysleta Gen. Hosp., Inc.,* 879 S.W.2d 67 (Tex.App.-El Paso 1994, writ denied); *McCain v. NME Hosps., Inc.,* 856 S.W.2d 751 (Tex.App.-Dallas 1993, no writ). Pursuant to these precedents, we hold that, by failing to make a timely objection, Texas–Ohio waived its complaint regarding the particularity of the sanction orders. Accordingly, we conclude that the trial court's failure to make the particularized findings required by Rule 13 would not have been reversible error under the facts of the present case.

### B. Requirements of Rule 13

We next focus on whether there was a sufficient showing in the record to support a Rule 13 sanction. Rule 13 authorizes trial courts to impose sanctions against an attorney, a represented party, or both, who filed a pleading that is either: (1) groundless and brought in bad faith; or (2) groundless and brought to harass. *Emmons v. Purser,* 973 S.W.2d 696, 700 (Tex. App.-Austin 1998, no pet.); *Monroe v. Grider,* 884 S.W.2d 811, 817 (Tex.App.-Dallas 1994, writ denied); *see also* TEX.R. CIV. P. 13; *Tanner,* 856 S.W.2d at 730–31. "Groundless" means no basis in law or fact and not warranted by a good faith argument for the extension, modification, or reversal of existing law. TEX.R. CIV. P. 13; *Tanner,* 856 S.W.2d at 730.

In their motions to dismiss, Mecom and Giles contended that "this entire action is a groundless attempt to extend

corporate debt liabilities to individuals . . . ." On appeal before this Court, Mecom and Giles have more specifically focused their argument on Article 2.21, § A(2) of the Texas Business Corporation Act. They contend that TEX. BUS. CORP. ACT ANN. art. 2.21, § A(2) (Vernon Supp.2000), is the exclusive means to hold a shareholder liable for a contractual obligation of the corporation and that liability will not be imposed under this statute unless the shareholder used the corporation to commit actual fraud for his own personal benefit. As such, Mecom and Giles contend that Texas–Ohio's claims are barred by Article 2.21, § A(2) and are therefore groundless.[7]

Article 2.21 provides the following, in relevant part:

(A) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate thereof or of the corporation, *shall be under no obligation to the corporation or to its obligees with respect to:*

. . . .

(2) *any contractual obligation of the corporation or any matter relating to or arising from the obligation* on the basis that the holder, owner, subscriber, or affiliate is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, *unless the obligee demonstrates that the holder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee* primarily for the direct personal

---

7. Texas–Ohio argues that TEX. BUS. CORP. ACT ANN. art. 2.21 was not before the trial court at the time it ordered the dismissal, and as such, it would have been improper for the trial court to dismiss its claims based on that statute. We disagree. Although Mecom and Giles did not specifically mention Article 2.21 in the motions to dismiss, they did argue that they should not be held personally liable for

corporate obligations. Furthermore, in their amended answer, which was filed before dismissal, Mecom and Giles stated, "Plaintiff's claims are barred by the Texas Business Corporation Act." We find that the issue of whether individuals can be held liable for corporate debts under Article 2.21 was properly before the trial court at the time of dismissal.

benefit of the holder, owner, subscriber, or affiliate....

TEX. BUS. CORP. ACT ANN. art. 2.21, § A(2) (Emphasis added.). Article 2.21 further states that the liability imposed on shareholders, beneficial owners, subscribers, and affiliates under Section A (above) "is exclusive and preempts any other liability," except when the individual "expressly assumed, guaranteed, or agreed to be personally liable to the obligee for the obligation" or "is otherwise liable to the obligee for the obligation under this Act or another applicable statute." TEX. BUS. CORP. ACT ANN. art. 2.21, § B(1), (2) (Vernon Supp.2000).

A careful reading of Article 2.21 leads us to the conclusion that Mecom and Giles are indeed within the class protected by the statute and that this statute is the exclusive means for Texas–Ohio to recover in the present case. All of Texas–Ohio's claims are attempting to hold shareholders personally liable for a *"matter relating to or arising from"* a contractual obligation of the corporation.[8] Moreover, Texas–Ohio is not alleging that Mecom and Giles agreed to be personally liable or are otherwise liable under the Business Corporation Act or another applicable statute. As such, Article 2.21, § A(2) is exclusive and preempts any other liability that otherwise could have been imposed under the facts of the present case.[9] Thus, if Texas–Ohio's claims are barred by Article 2.21, § A(2), they are groundless as a matter of law. *Cf. McCain,* 856 S.W.2d at 758 (plaintiff's claims alleging violations of Article 21.21 of the Texas Insurance Code were groundless as a matter of law because Article 21.21

applies only to those engaged in the business of insurance and none of the defendants were so engaged).

 In examining Texas–Ohio's second amended petition, we find that Texas–Ohio asserted claims for fraud, fraudulent inducement, negligent misrepresentation, and tortious interference with a contract. Article 2.21 states that no shareholder shall be liable for any matter relating to or arising from a contractual obligation of the corporation *unless the shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee" primarily for his direct personal benefit.* TEX. BUS. CORP. ACT ANN. art. 2.21, § A(2) (Emphasis added.). By definition, Texas–Ohio's allegation of negligent misrepresentation is not in the nature of an actual fraud claim, while the allegations of fraud and fraudulent inducement are. A claim of tortious interference with a contract does not necessarily require an act of fraud, but the means of interference may involve fraud, as is alleged in the present case. *See Rambo v. Federated Dep't Stores, Inc.,* 329 S.W.2d 890 (Tex.Civ.App.-Dallas 1959, writ ref'd n.r.e). Therefore, we conclude that Article 2.21, on its face, bars Texas–Ohio's claim for negligent misrepresentation and renders this claim groundless as a matter of law.

Mecom and Giles contend that Texas–Ohio's claims for fraud, fraudulent inducement, and tortious interference with a contract are also groundless based on the facts alleged in the present case. According to Mecom and Giles, Texas–Ohio is not

---

8. We note that Article 2.21 limits liability for contractual obligations of the corporation and also limits liability for torts "relating to or arising from" such contractual obligations. *See* TEX. BUS. CORP. ACT ANN. art. 2.21 cmt. (Vernon Supp.2000); *Menetti v. Chavers,* 974 S.W.2d 168, 174 (Tex.App.-San Antonio 1998, no pet.).

9. In its reply brief, Texas–Ohio argued that Article 2.21 does not apply to the present case because OGM was not incorporated at the time the alleged misrepresentation was made.

By its express terms, Article 2.21 limits the liability of "[a] holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate thereof or of the corporation...." Mecom and Giles were shareholders of OEC, which clearly was incorporated, and OEC ultimately wholly owned OGM. As such, Article 2.21 applies to limit the liability of Mecom and Giles regardless of whether OGM itself was incorporated.

alleging that either of them *personally* committed actual fraud, but rather Texas–Ohio is alleging that they participated in a conspiracy and thus should be held liable for the alleged fraudulent statements made by their co-conspirators. Mecom and Giles contend that, as a matter of law, the agents of a corporation cannot form a conspiracy with themselves and that no argument has been offered as to why this law should be modified, extended, or revised. Mecom and Giles further contend that Texas–Ohio is not alleging in its petition that the scheme to defraud was committed primarily for their own personal benefit as required by Article 2.21. For these reasons, Mecom and Giles argue that Texas–Ohio's claims for fraud, fraudulent inducement, and tortious interference are also groundless.

■ We disagree. Mecom and Giles are incorrect in stating that the agents of a corporation cannot form a conspiracy as a matter of law. Mecom and Giles rely on *Fojtik v. First National Bank of Beeville,* in which the Corpus Christi Court of Appeals stated "a corporation cannot conspire with itself, no matter how many of its agents may participate in the corporate action." *Fojtik v. First Nat'l Bank of Beeville,* 752 S.W.2d 669, 673 (Tex.

App.-Corpus Christi 1988), *writ denied,* 775 S.W.2d 632 (Tex.1989). However, in *Fojtik,* the court ultimately held that a corporate agent can conspire with its corporation if the agent is not acting in his corporate capacity. *Id.* We, too, conclude that this is the law. Although agents of a corporation cannot form a conspiracy while acting in their corporate capacity, agents can conspire with each other if they are acting in a different capacity or for a personal purpose of their own.[10] *See, e.g., Boone v. Federal Express Corp.,* 59 F.3d 84 (8th Cir.1995); *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.,* 629 So.2d 252 (Fla.Dist.Ct.App.1993); *Koster v. P & P Enter., Inc.,* 248 Neb. 759, 539 N.W.2d 274 (1995).

■ Furthermore, the fact that Texas–Ohio failed to allege in its petition that the fraud was committed for Mecom's and Giles's own personal benefit did not render Texas–Ohio's claims groundless. This merely indicates that Texas–Ohio's petition may have been defective for failing to plead an element of a cause of action. Pleadings that are defective in this manner should be remedied through special exceptions; they are not groundless so as to justify Rule 13 sanctions.[11] *See* TEX.R.

**10.** In addition to *Fojtik,* which was cited by Mecom and Giles, several other Texas cases have used language tending to suggest that a corporate agent cannot conspire with other corporate agents or with the corporation itself. In *Fojtik,* the Corpus Christi Court of Appeals took the statement quoted above from the Dallas Court of Appeals in the case of *Christopher v. General Computer Sys., Inc.,* 560 S.W.2d 698, 709 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.). And, in *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 5 (Tex.App.-Corpus Christi 1991, no writ), *overruled on other grounds, Cain v. Hearst Corp.,* 878 S.W.2d 577 (Tex.1994), the Corpus Christi court again quoted the above statement and then went on to hold that the plaintiff could not prevail on a conspiracy claim against a corporation where all the people involved in the alleged conspiracy were management personnel or employees of the corporation. In *Atlantic Richfield Co. v. Misty Prods., Inc.,* 820 S.W.2d 414, 421 (Tex.App.-Houston [14th Dist.] 1991, writ denied), the Fourteenth

Court of Appeals stated that "an employee or agent of the parent corporation and an employee or agent of the wholly owned subsidiary, acting within the course and scope of their employment or agency relationship, cannot conspire." This statement from *Atlantic Richfield Co.* is much more in line with our holding today, but it does not go far enough. We hold that corporate agents can conspire with one another even if they are purportedly acting as employees of the corporation, if they are in fact acting primarily for their own personal benefit. Mecom and Giles may have been acting as Olympic employees in making the gas purchases from Texas–Ohio, but there were allegations that they were acting primarily for their own personal benefit, and thus were ultimately acting in their individual capacity, not in their corporate capacity.

**11.** We address whether the trial court could have properly dismissed Texas–Ohio's claims for defective pleadings in part III of the opinion.

CIV. P. 90; *Peek v. Equipment Serv. Co. of San Antonio,* 779 S.W.2d 802, 805 (Tex. 1989).

Because we have determined that Texas–Ohio's claims for fraud, fraudulent inducement, and tortious interference are not groundless under Article 2.21,[12] we need not reach the issue of whether these claims were filed in bad faith or for the purpose of harassment. We conclude that it would have been an abuse of discretion for the trial court to dismiss Texas–Ohio's claims for fraud, fraudulent inducement, and tortious interference as a Rule 13 sanction. However, because we have determined that the claim for negligent misrepresentation is groundless as a matter of law, we must further determine whether the trial court could have reasonably found that this claim was filed in bad faith or for the purpose of harassment so as to justify a Rule 13 sanction.

Courts must presume that pleadings are filed in good faith, and the burden is on the party moving for sanctions to overcome this presumption. *Tanner,* 856 S.W.2d at 731; *see* TEX.R. CIV. P. 13. In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must measure a litigant's conduct at the time the relevant pleading was signed. *Aldine Indep. Sch. Dist. v. Baty,* 999 S.W.2d 113, 116–17 (Tex. App.-Houston [14th Dist.] 1999, no pet.); *Monroe,* 884 S.W.2d at 817. Moreover, the trial court must examine the facts available to the litigant and the circumstances existing at the time the pleading was signed. *Emmons,* 973 S.W.2d at 700; *McCain,* 856 S.W.2d at 757. The plaintiff's petition alone cannot establish that a case was brought in bad faith or to harass. *Aldine Indep. Sch. Dist.,* 999 S.W.2d at 117; *Emmons,* 973 S.W.2d at 700; *McCain,* 856 S.W.2d at 757. Rule 13 generally requires that the trial court hold an evidentiary hearing to make a determination about the motives and credibility of the person signing the petition. *McCain,* 856 S.W.2d at 757; *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 205 (Tex.App.-Dallas 1993, no writ); *Home Owners Funding Corp. v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.-Corpus Christi 1991, no writ). Under some circumstances, the trial court may be able to make such a determination by taking judicial notice of items in the case file. *But see Emmons,* 973 S.W.2d at 701.

In the present case, there was no evidentiary hearing on the matter, nor did the trial court take judicial notice of any items in the file. The trial court had no evidence to determine that Texas–Ohio filed its petition in bad faith or to harass.[13] Therefore, because there is insufficient evidence in the record to support Rule 13 sanctions for any of Texas–Ohio's claims, we conclude that it would have been an abuse of discretion for the trial court to dismiss Texas–Ohio's claims on the basis of Rule 13.[14]

12. We do not address the merits of these claims. We hold only that, based on the current record, these claims are not barred by Article 2.21.

13. It should also be noted that, at the hearing on the motion to reconsider, the trial judge stated, "I don't necessarily believe that the lawsuit was filed in bad faith or for the purpose of harassment."

14. Mecom and Giles contend that there was sufficient evidence that Texas–Ohio's claims were brought in bad faith or for the purpose of harassment based on the following: (1) Texas–Ohio's admissions which were deemed by the trial court; (2) a letter Texas–Ohio's attorney sent to the Olympic entities stating, "Personal liability of . . . [Olympic's] officers perhaps is unfortunate, but I assure you candidly that my client's outrage at Olympic's cavalier treatment of . . . [Texas–Ohio] will be remedied one way or another"; (3) Texas–Ohio's failure to properly replead in response to special exceptions; (4) Texas–Ohio's consistent statements asserting that the Olympic bankruptcy was voluntary when it in fact was not; and (5) Texas–Ohio's failure to state a cause of action under Article 2.21, § A(2). This so-called evidence was not sufficient to establish bad faith. The deemed admissions, the letter from Texas–Ohio's attorney, and the

## III. DEFECTIVE PLEADINGS

■ The next issue presented for review is whether the trial court would have been in error if it dismissed Texas–Ohio's claims on the pleadings for failure to state a cause of action.

On January 29, 1998, Mecom and Giles filed objections and special exceptions to Texas–Ohio's first amended petition.[15] The record reflects that a hearing was held on the special exceptions on March 20, 1998, but no reporter's record of the proceeding has been filed in this appeal, and the record does not contain a ruling on the special exceptions. On April 6, 1998, Texas–Ohio filed a second amended petition, and thereafter, Mecom and Giles filed first amended objections and special exceptions to Texas–Ohio's second amended petition.

The record reflects that Mecom and Giles asserted special exceptions to Texas–Ohio's pleadings in two separate motions. However, these motions were not before the trial court when it ordered the dismissal of Texas–Ohio's claims. The dismissal orders stated that the trial court heard the *motions to dismiss,* and it was those motions on which it ruled in granting the dismissals. The trial court did not dismiss Texas–Ohio's claims based on the special exceptions.

■ Moreover, the motions to dismiss cannot reasonably be construed as additional objections to defective pleadings. Although the motions to dismiss did state that the "Plaintiff has failed to state a cause of action," Mecom and Giles appar-

ently retreated from this argument after Texas–Ohio filed its response to the motions to dismiss. In its response to the motions to dismiss, Texas–Ohio argued that the motions to dismiss were an attempt to have the case dismissed on the pleadings without first successfully challenging the pleadings via special exceptions. In reply, Mecom and Giles argued that Texas–Ohio was attempting "to divert the Court with its mischaracterization [of the motions to dismiss]...." Mecom and Giles pointed out that they filed a separate motion for special exceptions and that a separate hearing had been set on that matter. They then went on to state that "Defendants' Motions requesting dismissal and sanctions *under Rules 13 and 215* ... are not based solely on allegedly vague pleadings.... Rather, *in accordance with the requirements of Rule 13* ... dismissal is appropriate because Plaintiff's pleadings are 'groundless and brought in bad faith or ... for the purpose of harassment.'" (Emphasis added.) In reviewing the record in its entirety, it is clear that the motions to dismiss were not based on allegedly defective pleadings. Therefore, it would have been error for the trial court to dismiss the case for defective pleadings because that issue was not before the trial court at the time dismissal was ordered.

■ Furthermore, even if the motions to dismiss could be construed as being based on defective pleadings, it would have been error for the trial court to dismiss the case on that basis. Although the Federal Rules of Civil Procedure provide

bankruptcy petition were not in the record at the time the trial court entered its dismissal orders. There is not a proper order in the record indicating that Mecom's and Giles's special exceptions were sustained and that Texas–Ohio was ordered to replead. And, failure to state a cause of action is not evidence of bad faith because a finding of bad faith cannot be based on the pleading at issue.

15. The special exceptions filed by Mecom and Giles complained about the following: (1) plaintiff failed to specifically plead the elements of fraud, negligent misrepresentation,

and tortious interference with a contract; (2) plaintiff failed to allege that Mecom and Giles were parties to the contractual agreement; (3) plaintiff failed to plead a cause of action for civil conspiracy because the agents of a corporation cannot form a conspiracy as a matter of law; (4) plaintiff failed to plead a cause of action for tortious interference because a person who induces the breach cannot be an agent of a contracting party; (5) plaintiff failed to state a maximum amount of damages; and (6) plaintiff failed to join the contracting party, OGM, as a defendant.

for a motion to dismiss for failure to state a cause of action, the Texas Rules of Civil Procedure do not contain an analogous provision. *See* FED.R.CIV.P. 12(b)(6); *see also Fort Bend County v. Wilson*, 825 S.W.2d 251, 253 (Tex.App.-Houston [14th Dist.] 1992, no writ). In Texas, such a complaint is considered to be a general demurrer, which is prohibited by Rule 90. *See* TEX.R. CIV. P. 90; *see also Centennial Ins. Co. v. Commercial Union Ins. Co.*, 803 S.W.2d 479, 482 (Tex.App.-Houston [14th Dist.] 1991, no writ). Under the Texas Rules of Civil Procedure, the proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 10 (Tex.1974). And, the trial court cannot dismiss the case at the same time it sustains special exceptions. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658–59 (Tex.1998). Once special exceptions are sustained, the trial court must give the party against whom the exceptions are sustained an opportunity to amend before dismissing the case. *Id.*

■ In the present case, special exceptions were filed before the trial court ordered dismissal; however, there was no written order indicating that the court sustained the exceptions and subsequently provided Texas-Ohio with the opportunity to amend. The party asserting the special exceptions waives the exceptions if the record does not reflect that the party obtained a ruling thereon, *Smith v. Grace*, 919 S.W.2d 673, 678 (Tex.App.-Dallas 1996, writ denied); *R.I.O. Sys., Inc. v. Union Carbide Corp.*, 780 S.W.2d 489 (Tex.App.-Corpus Christi 1989, writ denied), and the ruling must be in the form of a written order. Moreover, a docket entry generally may not take the place of a written order. *See, e.g., Faulkner v. Culver*, 851 S.W.2d 187, 188 (Tex.1993); *Estate of Townes v. Wood*, 934 S.W.2d 806, 806–07 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding); *First Nat'l Bank v. Birnbaum*, 826 S.W.2d 189, 190 (Tex.App.-Austin 1992, no writ); *Grant v. American Nat'l Ins. Co.*, 808 S.W.2d 181, 184 (Tex.App.-Houston [14th Dist.] 1991, no writ).

■ There is a docket notation in the present case that states, "Defendant's motion on special exceptions granted. Plaintiff to replead w/in 14 days. No order signed." The record does not contain a written order on the special exceptions. Thus, the trial court erred if it dismissed Texas-Ohio's claims on the pleadings for failure to state a cause of action.[16]

## IV. SUMMARY JUDGMENT

■ As the third and final alleged basis for the dismissal, Mecom and Giles contend that dismissal would have been proper as a no-evidence summary judgment. Thus, we must decide whether the trial court could have reasonably construed Mecom's and Giles's motions to dismiss as motions for summary judgment, and if so, whether a no-evidence summary judgment would have been proper.

---

16. Even if the trial court had entered a valid order and even if this issue had been raised in the motions to dismiss, it still would have been error for the trial court to dismiss the claims of fraud and fraudulent inducement with prejudice on the basis of defective pleadings. If a pleading defect cannot be cured by amendment, dismissal may be with prejudice. *See, e.g., Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 386 (Tex.1991). However, a trial court should not dismiss a plaintiff's claims with prejudice if the pleadings state a valid cause of action and the pleading defect could be cured by amend- ment. *Kutch v. Del Mar College*, 831 S.W.2d 506, 508 (Tex.App.-Corpus Christi 1992, no writ); *Hajdik v. Wingate*, 753 S.W.2d 199, 202 (Tex.App.-Houston [1st Dist.] 1988), *aff'd on other grounds*, 795 S.W.2d 717 (Tex.1990); *Atkinson v. Reid*, 625 S.W.2d 64, 66 (Tex. App.-San Antonio 1981, no writ). Under such circumstances, the proper remedy is to dismiss without prejudice. *Id.* In the instant case, valid causes of action for fraud and fraudulent inducement were pleaded. Thus, the trial court's ruling dismissing these claims with prejudice would not be sustainable on the basis of defective pleadings.

Rule 166a(i) of the Texas Rules of Civil Procedure allows a party to move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant will bear the burden of proof at trial. TEX.R. CIV. P. 166a(i); *see also State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996). The court must grant a proper no-evidence summary judgment motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *See Heal*, 917 S.W.2d at 9.

 Although the trial court in the present case ordered dismissal based on documents which were entitled motions to dismiss and motions to abate, we acknowledge that motions can be misnamed. Courts should look to the substance of a motion rather than the title to determine its nature. *State Bar of Texas v. Heard*, 603 S.W.2d 829, 833 (Tex.1980); *Wilson v. Kutler*, 971 S.W.2d 557, 559 (Tex.App.-Dallas 1998, no writ); *see also Speer v. Stover*, 685 S.W.2d 22 (Tex.1985). A motion's substance is to be determined from the body of the instrument and its prayer for relief. *Mercer v. Band*, 454 S.W.2d 833, 836 (Tex.Civ.App.-Houston [14th Dist.] 1970, no writ). The body and prayer of Mecom's and Giles's motions discussed dismissal and did not mention or request a summary judgment. There is nothing in the motion to put Texas–Ohio on notice that it needed to come forward with evidence to support its claims to avoid a no-evidence summary judgment. As such, the substance of the motions indicate that they were not motions for summary judgment.

In their brief before this Court, Mecom and Giles cite *Perry v. S.N.*, 973 S.W.2d 301 (Tex.1998), and represent that "The Texas Supreme Court has explicitly held that a motion to dismiss may be interpreted as [a] motion for summary judgment even when no summary judgment evidence is presented." The Supreme Court did not so hold in *Perry*, or in any other case. *Perry* did not involve a motion to dismiss, it did not involve a no-evidence summary judgment motion, nor did it ever even suggest that a motion to dismiss may be construed as a motion for summary judgment.[17]

Therefore, we conclude that the motions to dismiss could not reasonably be construed as no-evidence motions for summary judgment. It would have been an abuse of discretion for the trial court to have ordered summary judgment in the present case. Furthermore, because dismissal would have been improper as a Rule 13 sanction for defective pleadings, or on the basis of granting a summary judgment, we conclude that the trial court committed reversible error in dismissing Texas–Ohio's claims.

## IV. SUBJECT MATTER JURISDICTION

 By cross-point, Mecom and Giles contend that this Court is without subject matter jurisdiction and that Texas–Ohio's appeal should be dismissed. Specifically, Mecom and Giles contend that certain admissions that were deemed against Texas–Ohio by the trial court resolved the justiciable case and controversy between the parties, and thereby deprived the courts of subject matter jurisdiction.

 The Texas Supreme Court has stated, "Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994). If a court is without subject matter jurisdiction, any judgment rendered by it is void. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990). As a component of subject

---

17. *Perry* does stand for the proposition that a trial court may grant a motion for summary judgment for the plaintiff's failure to state a cause of action when special exceptions have been filed and the plaintiff has been given an opportunity to amend. However, a summary judgment motion was not filed in the present case.

matter jurisdiction, standing may be raised for the first time on appeal, and it may not be waived by the parties. *Texas Ass'n of Business v. Texas Air Control Board,* 852 S.W.2d 440, 445 (Tex.1993).

The trial court granted Mecom's and Giles's motions to dismiss on July 7, 1998. In August 1998, Mecom and Giles filed a motion to determine the sufficiency of Texas–Ohio's responses to requests for admissions. In this motion, Mecom and Giles argued that several of Texas–Ohio's responses were evasive or incomplete and that the responses in question should be deemed admitted as a matter of law. The following year, on April 6, 1999, the trial court ordered these admissions deemed against Texas–Ohio.

Among the admissions deemed were admissions that "[Mecom and Giles are] not liable to Texas–Ohio Gas, Inc. for the $716,618 claim set forth in the Proof of Claim dated March 23, 1998 [which Texas–Ohio filed in the bankruptcy court in connection with Olympic's bankruptcy]."[18] Mecom and Giles contend that this amounts to admissions by Texas–Ohio that Mecom and Giles are not liable in their individual capacities for the contractual obligation which forms the very basis of this lawsuit. As such, Mecom and Giles contend that these admissions resolved the justiciable case or controversy and deprived the courts of subject matter jurisdiction.

We disagree. These deemed admissions relate to a contractual claim against the Olympic entities that Texas–Ohio filed in Olympic's bankruptcy action. Thus, Texas–Ohio has merely admitted that Mecom and Giles are not liable for the bankruptcy claim which was based on a contract between Texas–Ohio and Olympic. Such an admission is undisputed and does not affect the outcome of the present case. In

the case at hand, Texas–Ohio has not attempted to hold Mecom and Giles liable on its contract with OGM. Instead, Texas–Ohio has attempted to hold Mecom and Giles liable for an allegedly fraudulent conspiracy in which they participated for their own personal benefit. Although Texas–Ohio has sued Mecom and Giles for damages that arose from the natural gas contract, the claims against Mecom and Giles sound in tort, not in contract. Mecom and Giles can be held liable for these tort claims, despite the fact that they are not liable for the contractual claim filed against Olympic in bankruptcy court. Therefore, we conclude that the deemed admissions did not resolve the justiciable case or controversy, Texas–Ohio has standing to appeal, and this Court has subject matter jurisdiction to hear the appeal.

## V. BANKRUPTCY STAY

 In their next cross-point, Mecom and Giles contend that, if this case is reversed and remanded, Texas–Ohio's claims should be stayed, subject to the automatic stay provisions of the Bankruptcy Code. Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . ." 11 U.S.C.A. § 362(a)(3) (West 1993). The debtor's estate is comprised of all the debtor's legal or equitable interests in property as of the commencement of the bankruptcy action, including rights of action which are bestowed by federal or state law. *In re MortgageAmerica,* 714 F.2d 1266, 1273–74 (5th Cir.1983); *Audio Data Corp. v. Monus,* 789 S.W.2d 281, 286 (Tex.App.-Dallas 1990, no writ); *see also* 11 U.S.C.A. § 541(a)(1) (West 1993). As

---

**18.** Texas–Ohio's response to this requested admission was "Plaintiff can neither admit nor deny this request as it is vague and confusing. Mecom [or Giles] is not the debtor in the bankruptcy matter, and Plaintiff has sued

Mecom [and Giles] in this lawsuit for fraud." Texas–Ohio has not challenged the trial court's action in finding this response to be insufficient and in deeming the admissions.

such, the automatic stay of Section 362(a) is far-reaching "and should apply to almost any type of formal or informal action against the debtor or the property of the estate.... [The stay] does not extend, however, to separate legal entities such as corporate affiliates, *partners in debtor partnerships* or to codefendants in pending litigation." *Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir.1993) (quoting 2 *Collier on Bankruptcy* ¶ 362.04 (15th ed.1993)). Moreover, the automatic stay provision does not extend to actions against non-debtors simply because of their relationship to the debtor. *In re Tierra Petroleum,* 232 B.R. 889 (Bankr.E.D.Texas, 1999) (automatic stay did not protect debtor corporation's principals simply because of their relationship to debtor); *see also Cortland Line Co. v. Israel,* 874 S.W.2d 178, 180–81 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (automatic stay did not protect debtor corporation's officers who were sued in their individual capacities).

■ An action against a nondebtor may be stayed, however, where the assets of the bankruptcy estate would be jeopardized by allowing the court proceeding to go forward against the nondebtor. *Paine v. Sealey,* 956 S.W.2d 803, 807 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *Beutel v. Dallas County Flood Control Dist.,* 916 S.W.2d 685, 692 (Tex.App.-Waco 1996, writ denied); *see also S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.,* 817 F.2d 1142, 1147–50 (5th Cir.1987). In *S.I. Acquisition,* the Fifth Circuit Court of Appeals established the following guidelines for determining whether the automatic stay provisions should be extended to an action against a nondebtor:

(1) a section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor;

(2) the section 362(a)(3) stay applies to a cause of action that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor; and

(3) *in applying the above rules we do so by keeping in mind the Bankruptcy Code's general policies of securing and preserving the debtor's property and of ensuring equal distribution of the debtor's assets to similarly-situated creditors.*

*S.I. Acquisition, Inc.,* 817 F.2d at 1150 (Emphasis added.). Based on these principles, the Fifth Circuit has recognized that the Section 362(a)(3) stay applies to actions against nondebtor defendants under the Texas Fraudulent Transfers Act, under the corporate trust fund doctrine or denuding of assets,[19] and under the remedy of alter ego or single business enterprise. *See In re Schimmelpenninck,* 183 F.3d 347 (5th Cir.1999); *S.I. Acquisition, Inc.,* 817 F.2d at 1149–53; *In re MortgageAmerica,* 714 F.2d at 1275–77.

Mecom and Giles rely on the *Schimmelpenninck* case in arguing that Texas–Ohio's claims "belong to" the Olympic entities and as such should be subject to the automatic stay provisions of Section 362(a)(3). In *Schimmelpenninck,* the Fifth Circuit held that the plaintiff's alter ego and single business enterprise claims against the debtor's wholly owned subsid-

**19.** In the present case, Texas–Ohio has alleged that the defendants denuded the corporation and therefore benefitted personally from their fraud. Such an allegation supports Texas–Ohio's cause of action for fraud, which requires proof that the individual shareholders acted primarily for their own direct personal benefit. Tex. Bus. Corp. Act Ann. art. 2.21, § A(2). An allegation of denuding the Olympic entities can also support a separate cause of action, which could be brought by Olympic against the individual shareholders. There is no dispute that this second type of cause of action would be stayed pursuant to the Bankruptcy Code because it involves a general claim that "belongs to" the bankruptcy trustee of the Olympic estate. Texas–Ohio is not pursuing the second type of cause of action. Texas–Ohio is not suing for the assets taken from the corporation, but is suing for the personal damages it suffered when it was allegedly fraudulently induced to sell gas to the Olympic entities.

iary were subject to the automatic stay provisions of Section 362(a)(3). *Schimmelpenninck*, 183 F.3d at 352. In reaching this conclusion, the Fifth Circuit relied heavily on the fact that the plaintiff in *Schimmelpenninck* advanced a general grievance applicable to all the creditors and not a personal grievance exclusive to the plaintiff. *Id.* at 352, 359. The court stated that determination of whether a claim is general or personal should aid courts in considering the first two principles of the *S.I. Acquisition* test, i.e., in considering whether the action "belongs to" the corporate debtor or whether the action seeks "recovery or control of property" of the corporate debtor. *Schimmelpenninck*, 183 F.3d at 359. The court stated, "*A [bankruptcy] trustee can assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal.*" *Id.* (Emphasis added.). This rule is in accordance with the public policy underlying the Bankruptcy Code. If a claim is generally applicable to all creditors, allowing a bankruptcy trustee to assert the claim ensures equal distribution of the debtor's assets to similarly situated creditors. The same is not true for personal claims.

After carefully considering the case law on this issue, we conclude that Texas–Ohio's claims of fraud could not be asserted by the bankruptcy trustee because these claims involve misrepresentations directed at Texas–Ohio personally and are not claims generally applicable to all creditors. Therefore, the automatic stay provisions of Section 362 do not extend to the claims asserted in the case at hand.

## VI. APPELLATE SANCTIONS

▮ The final matter we must decide is whether sanctions should be imposed on Texas–Ohio for making misleading statements in its brief before this Court. Mecom and Giles have requested that sanctions be imposed against Texas–Ohio for misleading this Court regarding facts central to this litigation. Specifically, Mecom and Giles complain about the following alleged misrepresentations: (1) Texas–Ohio implied in its brief, without directly stating, that Mecom and Giles had not filed special exceptions when they indeed had; (2) Texas–Ohio repeatedly stated in its brief that the Olympic entities were placed in voluntary bankruptcy, although Mecom and Giles have proof from outside the record that the bankruptcy was in fact involuntary; and (3) in its reply brief, Texas–Ohio stated that it objected to the trial court about the lack of particularized findings of good cause when the record reflects otherwise.

▮ Attorneys owe to the courts duties of scrupulous honesty, forthrightness, and the highest degree of ethical conduct. Inherent in this high standard of conduct is compliance with both the spirit and express terms of the rules of conduct. *In re J.B.K.*, 931 S.W.2d 581, 583 (Tex. App.-El Paso 1996, no writ). The Texas Disciplinary Rules of Professional Conduct prohibit a lawyer from knowingly making a false statement of material fact to a tribunal. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9); *see also Sherman v. State*, 12 S.W.3d 489, 492 (Tex.App.-Dallas 1999, no pet.). A court that receives information clearly establishing that a lawyer has violated Texas Disciplinary Rules of Professional Conduct should take appropriate action. *Ex parte Lafon*, 977 S.W.2d 865, 868 (Tex.App.-Dallas 1998, no pet.); *In re Maloney*, 949 S.W.2d 385, 388 (Tex.App.-San Antonio 1997, no writ); *Johnson v. Johnson*, 948 S.W.2d 835, 841 (Tex.App.-San Antonio 1997, writ denied). We retain the inherent power to sanction attorneys who engage in misconduct before our Court. *Public Util. Comm'n of Texas v. Cofer*, 754 S.W.2d 121, 124 (Tex.1988); *Johnson*, 948 S.W.2d at 840; *Kutch v. Del Mar College*, 831 S.W.2d 506, 509 (Tex.App.-Corpus Christi 1992, no writ).

We reviewed the contentions of misrepresentations in the present case. We caution counsel for Texas–Ohio against such practices; however, we recognize the possibility that these errors were not made in bad faith, and on that basis we decline to sanction the attorneys. This cross-point is overruled.

## VII. CONCLUSION

In conclusion, we find no proper basis for the trial court's dismissal: (1) it would have been error for the trial court to dismiss the claims as a Rule 13 sanction because the fraud and fraudulent inducement claims are not groundless, and there was no evidence that any of the claims were brought in bad faith or for harassment; (2) it would have been error for the trial court to dismiss the claims on the basis of defective pleadings because that matter was not before the trial court at the time dismissal was ordered, and because Mecom and Giles waived their special exceptions by failing to obtain a written order sustaining them; and (3) it would have been error for the trial court to dismiss the claims as a no-evidence summary judgment because there was no motion for summary judgment filed in the trial court.

Mecom's and Giles's cross-points are further overruled: (1) Texas–Ohio's deemed admissions did not deprive the courts of subject matter jurisdiction; (2) Texas–Ohio's claims are not subject to the automatic stay provisions of the Bankruptcy Code; and (3) we choose not to impose sanctions on Texas–Ohio for making misleading statements in its brief before this Court.

We reverse the trial court's judgment and remand the cause for trial.

