Reversed in Part and Remanded and Opinion filed March 27, 2003












Reversed in Part and Remanded and Opinion filed March
27, 2003.

 




 
 
 
 
  
 
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01240-CV

____________

 

ARLEEN DAHL DILLON, DOMINIK E.
MOSZKOWICZ,

KAREN MOSZKOWICZ, and MADELINE D. SITZES, Appellants

 

V.

 

ROSALIE DAHL ESTATE TRUST, ROSALIE
DAHL, BENEFICIARY OF THE ROSALIE DAHL ESTATE TRUST, and TED DAHL, TRUSTEE OF
THE ROSALIE DAHL ESTATE TRUST,
Appellees

 



 

On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 00-23660

 



 

M E M O R A N D U M   
O P I N I O N








In the latest episode of a long-running family dispute, the
Rosalie Dahl Estate Trust (“Trust”) brought suit to declare void a 1988 deed of
property conveyed by Rosalie Dahl to two of her daughters and her son-in-law,
appellants Arleen Dahl Dillon, Karen Moszkowicz, and Dominik E.
Moszkowicz.  Several years earlier, Mrs.
Dahl had sued Arleen, Karen, and Dominik over the same deed, and the trial
court reformed the deed to grant her a life estate.  Mrs. Dahl then executed another deed to the
property in 1997, this time to the Trust. 
In 1998, Mrs. Dahl executed a “corrected deed” containing an amended
legal description.  In the present
lawsuit, appellees, the Trust, Rosalie Dahl as beneficiary of the Trust, and
Ted Dahl[1]
as trustee of the Trust (collectively, Rosalie) argued that the 1988 deed was
void because the legal description of the property was defective.  The trial courtCthe same court that
decided the earlier disputeCbegrudgingly
agreed and declared the 1988 deed void. 
On appeal, Arleen, Karen, and Dominik contend the trial court erred
because the present suit was barred by res judicata, or, alternatively, the
legal description of the property was not void and should have been reformed. 

Separately, appellant Madeline D. Sitzes, an attorney who
represented Arleen, Karen, and Dominik in the earlier lawsuit, and received
from them an interest in the property as payment for legal fees, joins the
other appellants in arguing that the deed is not void.  She also appeals the trial court=s dismissal of her counterclaims for
want of prosecution and the assessment of costs against her.  Among other things, Sitzes contends that (1)
the parties entered into a Rule 11 agreement to sever and abate the claims
against Rosalie and Ted Dahl individually, (2) the judgment did not dispose of
all parties and claims, and (3) the trial court erred by not permitting her to
present evidence on a motion for sanctions filed after appellees nonsuited
their claims against her.  Appellees have
moved for sanctions against Sitzes for filing a frivolous appeal.  

We first address one of the issues raised by Arleen, Karen,
and Dominik.  We next address attorney
Sitzes= issues, and we conclude with a
discussion of the motions for sanctions brought by Rosalie and Ted Dahl
individually.  For the reasons stated
below, we reverse the trial court=s judgment in part and remand, and we
impose sanctions against Sitzes in the amount of $500.00 for filing a frivolous
appeal. 








ARLEEN, KAREN, AND DOMINIK=S APPEAL

Arleen, Karen, and Dominik present three issues on appeal:
(1) the trial court erred in refusing to follow its ruling in the earlier suit;
(2) the trial court erred in declaring the deed void; and (3) the trial court
erred in denying a request to reform the deed. 
Because we sustain their third issueCthat the trial court erred in
refusing to reform the deedCwe will not discuss their other two issues.  We will address only their third issue, which
we conclude disposes of the entire appeal.

1.         The
trial court erred in refusing to reform the deed.

In their third issue, Arleen, Karen, and Dominik contend that
the trial court erred in refusing to reform the deed.  We agree. 

a.         The Record
Reveals Mutual Mistake.

Appellants argue the trial court should have reformed the
deed because, through a mutual mistake by both the mother and appellants, the
original deed and the reformed deed from the first lawsuit did not accurately
describe the property meant to be conveyed. 
See Davis v. Grammar, 750 S.W.2d 766, 767B768 (Tex. 1988).  They claim this is evidenced by the fact that
the parties went through the earlier lawsuit and obtained a judgment containing
an erroneous legal description.  

A mutual mistake of fact in a deed may be grounds for
reformation when the mistake constitutes a material inducement to the
transaction.  Tex. Jur. 3d Deeds '
167 (1998). 

A mutual mistake is an erroneous Y conception or conviction induced by Y misunderstanding of the truth common to the parties
of the transaction, which results in some act or omission done or suffered
erroneously by one or both of the parties without its erroneous character being
intended or known at the time.  Relief
from the effects of mutual mistake in a deed may be granted where the parties,
under a mutual mistake, include in the deed property other than that intended
to be conveyed.

 








Id.; see
also Thalman v. Martin, 635 S.W.2d 411, 413 (Tex.
1982) (holding party was entitled to equitable remedy of reformation of deed
when parties had reached agreement, but deeds did not reflect the true
agreement because of mutual mistake).

This case provides a textbook example of mutual mistake.  Mrs. Dahl testified that her mother conveyed
to her the property that she was living on at 1006 Fries Road.  She said that she, in turn, intended to
convey to Arleen, Karen, and Dominik the same property.  She told them of her intent and so,
presumably to avoid her having to pay for the preparation of the deed or to
move the process along, they had their lawyer obtain the property description
and include it in a deed for them; this became the 1988 deed.  But what Arleen, Karen, and Dominik did not
know, and their lawyer did not discover, was that the property records
contained an original deed to Mrs. Dahl, and then a later, corrected deed to
her.  The corrected deed contained the
correct description of the property at 1006 Fries Road.  Without Arleen, Karen, Dominik, or Mrs. Dahl=s knowledge, Arleen, Karen, and
Dominik=s lawyer used the wrong property
description contained in the original deed. 
But the parties still executed the document.  The parties= subsequent behavior demonstrates
they believed the deed to be correct.

In the 1995 lawsuitCthe first suitCMrs. Dahl sued, trying to get the
property back, because she was afraid her children were going to sell the
property, leaving her without a home to live in for the remainder of her
life.  The trial court did not award the
property back to Mrs. Dahl, but did grant her a life estate in the
property.  No claim was ever made that
the deed was defective.  In fact, the
court and the parties used the 1988 deed as the correct language and added the
life-estate language to it.

Clearly, all of the parties still mistakenly believed that
the deed correctly described the property. 
It was not until after this suit that Mrs. Dahl, apparently still very
unhappy with Arleen, Karen, and Dominik, somehow realized that the 1988 deed
she executed contained the incorrect property description or, better put, no
property description at all.








This evidence proves mutual mistake.

b.         Does the
Record Reveal the Proper Legal Description?

Rosalie maintains that appellees still cannot prevail because
they offered no evidence of the proper legal description.  Appellants, however, assert that the 1988
deed=s legal description can be replaced
with the legal description in the 1998 corrected deed describing the property
that Mrs. Dahl placed in the Trust. 

It is evident from Mrs. Dahl=s own testimony and actions that she
intended to convey the same property two times: 
first to appellants and later to the Trust.  She testified that in 1988, she intended to
convey to Arleen, Karen, and Dominik the property she received from her mother,
and in 1997, she deeded the same property to the Trust because she wanted it
back.  She did this because she was
unsuccessful in her earlier attempt to get her property back, and because she
realized the 1988 deed did not describe her property at 1006 Fries Road.  She then filed the 1998 corrected deed to
correct the property description in the earlier deed, and later (in 2000) filed
a declaratory judgment action stating that she, alone, owned the property and
that Arleen, Karen, and Dominik had placed a cloud on her title.

The record also contains the deposition testimony of a
surveyor named Jakubik, who used the legal description taken from the 1998
corrected deed to demonstrate the difference between it and the 1988 deed.  In the lawsuit below, Mrs. Dahl relied upon
the legal description in the 1998 corrected deed to support her claims that (1)
the 1988 deed was defective and (2) the 1998 corrected deed accurately
reflected the property she intended to convey to the Trust.[2]  








This evidence establishes that the 1998 corrected deed
contains the correct property description for the property at 1006 Fries
Road.  

c.         Rosalie=s claim that appellants still cannot
prevail.

But, even if mutual mistake is proved, and even if the record
contains an appropriate property descriptionCboth of which we have heldCRosalie raises two reasons she
believes Arleen, Karen, and Dominik still cannot prevail.  First, she argues that the grantee of a gift
conveyance may not maintain an action to reform a deed.  However, appellants did not initiate an
action for reformation, they sought reformation in
response to Rosalie=s lawsuit.  Moreover,
the trial court expressly refused proposed findings of fact and conclusions of
law that the 1988 deed was a gift deed, and Rosalie Dahl=s pleading in the earlier lawsuit
specifically alleged that consideration was paid for the deed.  

Second, Rosalie argues that the claim for reformation is
barred by limitations. 

A suit for reformation of a deed is governed by the four-year
statute of limitations.  See Tex. Civ. Prac. & Rem. Code Ann. ' 16.051 (Vernon 1997); Brown v. Havard, 593 S.W.2d 939 (Tex. 1980).  Rosalie argues that the statute of
limitations begins to run from the time of the delivery of the deed, and that a
grantee is charged with knowledge of the recitals in the deed.  See Carminati v.
Fenoglio, 267 S.W.2d 449, 452 (Tex. Civ. App.CFort Worth 1954, writ ref=d n.r.e.); Texas Osage Coop.
Royalty Pool v. Colwell, 205 S.W.2d 93, 96 (Tex. Civ. App.CAmarillo 1947, writ ref=d n.r.e.).  This rule is not set in stone, as Rosalie
would have us believe.








In Sullivan v. Barnett, the Texas Supreme Court
explained that the presumption that a grantor or grantee has immediate knowledge
of a mutual mistake contained in a deed is rebuttable, and there are various
circumstances, such as subsequent conduct of the parties, that will excuse a
delay in discovery of the mutual mistake. 
471 S.W.2d 39, 45 (Tex. 1971). 
The Court went on to state the now well-recognized rule that “once the
presumption of immediate knowledge is rebutted, the statute of limitation will
commence to run when the mutual mistake was, or in the exercise of reasonable
diligence should have been, discovered.” 
Id.; see also Escamilla v. Estate of Escamilla by Escamilla,
921 S.W.2d 723, 727 (Tex. App.CCorpus Christi 1996, writ denied)
(“The discovery rule may extend limitations until the party seeking reformation
knew, or in the exercise of reasonable diligence should have known, of the
mistake in the deed.”).

Because reformation is an equitable remedy, courts have, in
certain instances, determined that the statute of limitations does not apply
when its application would produce an inequitable result.  For example, in Barnett, the court
noted that when no rights of bona fide innocent purchasers have intervened, or
would be impacted, (1) actions or defenses by persons in peaceable possession
based upon mutual mistakes in deeds, and (2) removal of clouds from title, are
not barred by the four-year statute of limitation.  Barnett, 471 S.W.2d. at 47; see
also Texas Co. v. Davis, 113 Tex. 321, 336, 254 S.W. 304, 309 (1923)
(holding that action to remove cloud on title to real estate is continuing and
never barred while cloud exists); Terry v. Baskin, 44 S.W.2d 929, 932B33 (Tex. Comm=n App. 1932, holding approved)
(allegation of fraud by defendants in possession of property as defense to
plaintiff=s action for partition and sale not
barred by statute of limitations).








Our review of these and other cases convinces us that equity
bars the application of the statute of limitations here.  Here, Mrs. Dahl testified that, when she
executed the 1988 deed, she intended to convey the property at 1006 Fries Road
to her daughters and son-in-law. 
Thereafter, she became dissatisfied with them and filed a lawsuit in
1995 to get the property back.  Instead,
she was awarded only a life estate; she did not appeal this decision.  At some point after that, although it is
unclear from the record exactly when, Mrs. Dahl discovered the incorrect legal
description.  Seizing upon the error, she
then reconveyed the property to the Trust (of which she was the beneficiary)
and filed the present lawsuit.  This
time, she alleged that the 1988 deed was void because the legal description of
the property was insufficient, that she owned the property described in the
1998 corrected deed, and that appellees had created a cloud on her title by
pledging the property as security on a legal fee debt owed to Sitzes.  By way of counterclaim, appellees sought
reformation only in defense to Rosalie=s claims.  In this situation, it would be unfair and
unjust to hold that the statute of limitations bars the reformation claim; the
purpose of the reformation claim is to correct the deed so that it can carry
out the original intentions of the parties. 
Rosalie=s purpose in throwing up the statute
of limitations as a bar to suit is to thwart the parties= original intentions.  In cases of mutual mistake as here, equity
does not favor such a bar.  See
Barnett, 471 S.W.2d at 47.  We also believe that it contradicts public
policy favoring finality of judgments to hold that limitations should bar a
party from presenting evidence that would uphold a judgment based on a deed all
parties thought was correct.  

In short, in this case, both equity and public policy favor
allowing Arleen, Karen, and Dominik to present their evidence of mutual
mistake.  The only policy that favors
Rosalie=s position is the policy that suits
should be brought within a certain amount of time.  However, that policy is based on the belief
that parties to a transaction should not be subject to suit forever and,
especially in the case of land, the more time that elapses, the more likely it is
that a third party=s rights will be impacted. 
However, here, neither aspect of the policy is violated.  First, the party trying to undo the original
transaction is also the party trying to assert limitations; this type of
offensiveCrather than defensiveCuse of the procedural device of
limitations is unfair.  Second, no third
parties= rights will be impacted by allowing
the parties to present evidence of mutual mistake; the only parties involved
are the ones who entered into the original transaction.

In short, we find that the trial court erred in refusing to
reform the 1988 deed to contain the legal description of the property contained
in the 1998 corrected deed.

Accordingly, we sustain Arleen, Karen, and Dominik=s third issue and order the 1988 deed
reformed to include the following legal description:








Being part of Lots Eighteen (18) and Nineteen (19) in
the unrecorded subdivision of John Fries, a 51 acre tract out of the A. H.
Osborne survey, A-610 in Harris County, Texas, and being more particularly
described by metes and bounds as follows:

BEGINNING at an iron rod in the Southwest corner of
Lot No. 19, being at the intersection of the East line of Fries Road and the
North property line of the MK & T Railway property; 

Thence N 89° 44’ 00 E, along the North right-of-way line of the MK
& T Railway, a distance of 242.69 feet to an iron rod for a corner;

Thence N 00° 26’ 09" W, a distance of 174.49 feet to an iron
rod for a corner;

Thence S 89° 23’ 40” W a distance of 242.97 feet to an iron rod in
the East right-of-way line of Fries Road and being 30 feet South of the
Northwest corner of Tract No. 18;

Thence S 00° 32’ 31” E 169.90 feet to the Place Of Beginning, and
containing .96 acres of land.  

 

We further order that the above reformation is retroactive to July
 22, 1988 to effect the intent of Rosalie Dahl at the time she executed
the deed.  In so doing, we
expressly incorporate the trial court=s judgment in 1996 granting Rosalie
Dahl a life estate in the property.

SITZES’ APPEAL

In seventeen somewhat jumbled and overlapping issues,
appellant Madeline Sitzes complains the trial court erred in (1) rendering
judgment against her and dismissing her counterclaims for want of prosecution
when the parties had entered into a Rule 11 agreement to sever and abate her
counterclaims and third-party claims, (2) failing to dispose of all parties and
claims in the judgment, (3) failing to permit her to present evidence on her
motion for sanctions, (4) proceeding to trial without her when she was a necessary
party, (5) declaring the deed void, (6) assessing costs against her, and (7)
rendering judgment against her when she was not served with citation.  We address each in turn.

1.         The purported Rule 11 agreement.








In issues 1, 3, and 4, Sitzes contends the trial court erred
in entering a judgment against her and dismissing her counterclaims for want of
prosecution.  Specifically, Sitzes claims
the parties entered into a Rule 11 agreement in which they agreed that the defendants= counterclaims and third-party claims would be severed and
abated until further notice from the court. 
Sitzes argues the trial court erred in entering a judgment against her
because the plaintiffs nonsuited their claims against her before trial, and the
Rule 11 agreement severed her counterclaims and third-party claims.  Sitzes also argues that the trial court erred
in dismissing her claims for want of prosecution because the Rule 11 agreement
should have been enforced.  

Based on record cites, it appears that Sitzes is referring to
an alleged agreement apparently made between her and the other parties that her
claims would be severed, and that discovery in the severed case would be abated
until further notice.  This agreementCif it was an agreementCwas contained in a proposed order
submitted to the court by which the court denied two motions for summary
judgment.  However, in addition to
denying both motions for summary judgment, the court struck the entire paragraph
containing the agreement to sever and abate. 
For several reasons, this proposed order does not accomplish what Sitzes
hopes it did.

First, it does not qualify as a Rule 11 Agreement.  Rule 11 of the Texas Rules of Civil Procedure
provides that, unless otherwise provided in the rules, “no agreement between
attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of
the record, or unless it be made in open court and entered of record.”  Tex.
R. Civ. P. 11.  Although the
proposed order was in writing and filed in the papers of the cause, it was
approved only as to form.  Nothing in
order indicates all of the parties agreed to the severance and abatement.  








A second, more fundamental, problem also exists.  The court crossed out the entire paragraph,
refusing to sever or to abate these claims. 
This decisionCwhether to sever and abateCwas the court=s to make.  The rules of civil procedure give the court
the authority to decide whether to sever or abate.  See Tex.
R. Civ. P. 41.  The parties may
request an abatement or a severance, but an abatement or severance will occur
only on the court=s approval or own motion.

In short, Sitzes= claims were properly before the
court on the day of trial.  The trial
court entered a finding of fact that Sitzes was given notice of the trial
setting, which Sitzes does not challenge.[3]  The trial court did not err in entering a
judgment against her and in dismissing her claims for want of prosecution when
she did not appear for trial, and we overrule issues 1, 3, and 4. 

2.         The
effect of the judgment on the parties and claims.








In issues 7 through 9, Sitzes complains that the trial court
did not dispose of all parties and claims in the judgment.  Sitzes acknowledges that the judgment
contains a “Mother Hubbard” clause stating that “[t]he court denies all relief
not granted in this judgment.” 
Nevertheless, she argues that the judgment did not dispose of her “cross-action”[4]
against Rosalie Dahl, Ted Emil Dahl individually, and against Ted Emil Dahl as
trustee of the Rosalie Dahl Estate Trust, because they are not specifically
mentioned in the judgment.  In support of
her contention, she cites Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001), for the
proposition that to be a final judgment, a judgment must dispose of all claims
and all parties.  Apparently, Sitzes
misunderstands the principles announced in Har-Con.  In that case, the Texas Supreme Court held
that a Mother Hubbard clause or its equivalent does not indicate that a
judgment rendered without a conventional trial is final for purposes of
appeal.  See id. at 203B04.  The Court
reiterated that Mother Hubbard language in a judgment after a full trial on the
merits, either to the bench or before a jury, indicates the trial court=s intention to finally dispose of the
entire matter, assuming that a separate or bifurcated trial is not ordered.  Id. at 204. 
Therefore, contrary to Sitzes= assertion, the judgment=s language indicating that the court
was denying all relief not granted disposed of all of the claims and motions in
the lawsuit.  

We overrule issues 7 through 9.




3.         The
motion for sanctions.

In issues 5, 6, 10, 11, and 12, Sitzes raises various
complaints about a motion for sanctions she filed after Rosalie nonsuited her
claims against Sitzes and before judgment was entered in the case.

A trial court=s decision whether to award sanctions will be set aside only
if it abused its discretion in making its decision.  See Aldine Indep.
Sch. Dist.
v. Baty, 999 S.W.2d
113, 115 (Tex. App.CHouston
[14th Dist.] 1999, no pet.). 
But Sitzes does not argue that the trial court abused its discretion in
denying her motion for sanctions; her argument appears to be that a denial was
improper because the judgment was not finalCan assertion we have
already rejected.  Even if she had argued
that the trial court abused its discretion, however, we would not have
agreed.  A review of her motion for
sanctions reveals that it is rambling, largely incoherent, and devoid of any
articulable basis for imposing sanctions. 
Sitzes filed a post-trial motion for new trial on her sanctions motion,
which was denied, but she does not complain on appeal of the denial of the
motion for new trial.  

Therefore, we overrule issues 5, 6, 10, 11, and 12.

4.         Trial
in the absence of a necessary party.








In issue 13, Sitzes contends her presence was necessary for a
just adjudication of the claims pertaining to the 1988 deed and Sitzes= deed of trust.  She makes no argument in support of her
contention, and her only citations to authority are general propositions of law
relating to compulsory counterclaims. 
Sitzes also overlooks the fact that she was a party to the suit,
but her claims were dismissed for want of prosecution.  We find this issue both inadequately briefed
and wholly without merit.  We therefore
overrule it.

5.         The
trial court=s
declaration that the 1988 deed was void.

In issues 14 through 16, Sitzes contends the trial court
erred in declaring the 1988 deed void because the
legal description was sufficient.  Sitzes= entire support for these issues
consists of a single block quote from one case setting out the general rules of
law pertaining to the legal sufficiency of a property description in a
deed.  She does not apply these rules to
the facts or make any argument in support of her contentions.  Therefore, Sitzes has waived these issues by
failing to properly brief them.  See
Tex. R. App. P. 38.1(h)
(requiring that appellant=s brief “must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the
record”).

6.         The
assessment of costs.

In issue 2, Sitzes contends the trial court erred in granting
judgment for costs against her because Rosalie was not the “successful” party
as to Sitzes.  See Tex. R. Civ. P. 131 (authorizing the recovery of costs to the
successful party to a suit).  She argues that Rosalie was not successful
against her because Rosalie nonsuited her claims against Sitzes before trial,
and the parties agreed to sever and abate the their
claims against Rosalie in the Rule 11 agreement.  She also contends the judgment is “vague and
obscure” as to whether costs are awarded to Ted Dahl individually.  We find these arguments meritless.  








First, as discussed above, the trial court dismissed Sitzes= claims for want of prosecution, and
the purported Rule 11 agreement was not accepted by the trial court.  Given these facts, it is completely
disingenuous for Sitzes to argue that Rosalie was not Asuccessful@ against her.  Second, Sitzes= argument is based on the presumption
that the trial court awarded costs under Rule 131.  However, Rosalie sued for declaratory relief
under the Uniform Declaratory Judgments Act, which specifically authorizes the
trial court to award costs and attorney=s fees in its discretion.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997).  Sitzes does not even address this basis for
the recovery of costs.  Finally, we
disagree that the judgment is vague.  The
costs adjudged against Sitzes and the other named defendants were clearly
awarded to the named plaintiffs only.  We
therefore overrule issue 2. 

7.         No
citation.

In issue 17, Sitzes contends that the trial court erred in rendering
judgment against her when she was never served with citation by Rosalie Dahl as
beneficiary of the Rosalie Dahl Estate Trust or Ted Emil Dahl as trustee of the
Rosalie Dahl Estate Trust, and they were never aligned as plaintiffs as recited
in the judgment.  Rosalie argues Sitzes
has waived the issue because the argument section of her brief makes no mention
of it, and nowhere in her brief does she cite the record in support of her
contentions.  In reply, Sitzes
acknowledges her failure to brief the issue, and her only explanation for this
is her “obvious negligence.”  We
therefore overrule Sitzes= issue 17.

APPELLEES’ MOTION FOR SANCTIONS

Appellees urge us to impose sanctions on Sitzes for filing a
frivolous appeal.  Having spent
considerable time and effort addressing her seventeen issues, most of which
were so poorly written it was difficult to discern her argument, and many of
whichConce we understood the rambling
argumentCwere waived, irrelevant, or
meritless, we agree.  

Whether
to grant sanctions is a matter of discretion, which we exercise with prudence,
caution, and after careful deliberation. 
See Rios v. Northwestern Steel and Wire Co., 974 S.W.2d 932, 936
(Tex. App.CHouston [14th Dist.] 1998, no
pet.).  We consider the case from the
viewpoint of the advocate and determine whether she had reasonable grounds to
believe the judgment should be reversed. 
See id. 








Here,
it is evident that Sitzes did not sufficiently review the Texas Rules of
Appellate Procedure or the legal issues involved.  Instead, she raised seventeen issues_far more than the three issues raised by the other
appellants_many of which were incoherent,
illogical, and inadequately briefed.  She
should not have filed a brief that so unnecessarily burdened appellees and this
Court and, being a lawyer, she should have known that the issues were either
inadequately briefed or meritless. 

Therefore,
we grant appellees= motions for sanctions and impose sanctions in the amount of
$500 against Sitzes.  Of this total amount,
Sitzes is ordered to pay $250.00 to appellees Rosalie Dahl Estate Trust,
Rosalie Dahl, beneficiary of the Rosalie Dahl Estate Trust, and Ted Dahl,
trustee of the Rosalie Dahl Estate Trust; and $250.00 to Ted Dahl,
individually.  

 

CONCLUSION

The judgment of the trial court is reversed in part and
remanded for entry of a judgment in accordance with this opinion.  We also impose sanctions on appellant
Madeline Sitzes in the amount of $500.00. 
We affirm the judgment in all other respects.

 

/s/        Wanda McKee Fowler

Justice

 

 

Judgment rendered and Opinion filed March 27, 2003.

Panel consists of Chief Justice Brister and Justices Hudson and Fowler.











[1]  Ted Dahl is
Rosalie Dahl=s son.





[2]  Although she did
not state her reasons this directly, this conclusion is implicit in her
testimony and the only conclusion to reach from it.  What she did say directly is that she was
told the 1988 deed did not correctly describe the property, and so she filed
the corrected deed and transferred the property described in the corrected deed
into her own trust because she Awanted the property back from her daughters.@  The only
logical conclusion to reach from this is that she filed the 1998 corrected deed
because it correctly described her property at 1006 Fries Road.





[3]  Moreover,
Sitzes did not file a verified motion to reinstate challenging the trial court=s dismissal of her claims.  See Tex.
R. Civ. P. 165a(3).





[4]  One of Sitzes= arguments is that the judgment recites that her Acounter-claims@ are
dismissed, but makes no mention of her Across-claims@ against Ted Emil Dahl individually, Ted Emil Dahl as
trustee of the Rosalie Dahl Estate Trust, and Rosalie M. Dahl.  However, Sitzes (and the other appellants)
misidentified the claims.  A Across-claim@ is a
claim by one party against a co-party.  See
Tex. R. Civ. P. 97(e).  Sitzes makes no claims against the other
appellants; therefore, technically, she has made no cross-claims.  To the extent her claims are directed to a
party that is not a plaintiff or another defendant, her claim is properly
identified as a third-party action.  See
Tex. R. Civ. P. 38.  In any event, the misidentification does not
affect our analysis of her complaint.