

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00833-CV

**IN THE INTEREST OF M.A.G.** and Z.A.G., Children

From the County Court at Law No. 2, Webb County, Texas
Trial Court No. 2017FLI001815 C3
Honorable Missy Medary, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Luz Elena D. Chapa, Justice
            Beth Watkins, Justice
            Liza A. Rodriguez, Justice

Delivered and Filed: December 23, 2020

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

The underlying case was originally filed by the Office of the Attorney General against Abelardo G. Gonzalez seeking child support. Gonzalez filed a claim against his wife, Ivonne I. Gonzalez, raising issues relating to conservatorship and possession. Gonzalez also filed third-party actions against the Hon. Jose A. Lopez, Judge of the 49th Judicial District Court of Webb County, City of Laredo Police Department Officer Nicolas Lichtenberger, City of Laredo Police Department Officer Robert Garcia, and Webb County Sheriff's Department Deputy Ponce Trevino. All of the third-party defendants were sued in their official capacities only. The claims

---

[1] The Honorable Victor Villarreal, Presiding Judge of County Court at Law No. 2, Webb County, signed the orders dismissing the claims against Officer Nicolas Lichtenberger, Officer Robert Garcia, and Judge Jose Antonio Lopez and awarding sanctions; the Honorable Sid Harle, sitting by assignment, signed the Order in Suit Affecting the Parent-Child Relationship; and the Honorable Missy Medary, sitting by assignment, signed the order disposing of the claims against Deputy Ponce Trevino.

among the Office of the Attorney General, Gonzalez, and his wife were disposed of in a SAPCR Order, and Gonzalez's claims against the public officials were disposed of in three separate orders, one of which awarded sanctions against Gonzalez. On appeal, Gonzalez complains of each of these orders, raising eight issues, several of which are multifarious. For the reasons discussed below, we affirm the SAPCR Order and the orders dismissing Gonzalez's third-party claims. We reverse the trial court's order granting sanctions against Gonzalez and remand for a new hearing on the motion.

## I. THE SAPCR

### A. Background

The Office of the Attorney General of the State of Texas ("OAG") filed an original SAPCR in September 2017, in the interest of M.A.G. and Z.A.G., the two minor children of Abelardo G. Gonzalez ("Gonzalez") and Ivonne I. Gonzalez ("Ivonne"). The petition, filed pursuant to Chapter 231 of the Family Code, alleged the parents were separated and requested the court to appoint appropriate conservators for the children and to award current and retroactive child and medical support.

Gonzalez answered, alleging he had been in prison since January 2010, had no income, and is disabled. Gonzalez requested the court consider his circumstances and award no child support. He attached to his answer a copy of a judgment of conviction dated January 15, 2010, reflecting he was sentenced to thirty years for aggravated robbery and engaging in organized criminal activity. Gonzalez also filed a "counterclaim," alleging his wife, Ivonne, had denied him access to the children by not allowing them to visit him in prison. As relevant to this appeal, he prayed for: (1) a geographic restriction requiring Ivonne to maintain the children's residence in Webb County; (2) a non-standard visitation order for once-monthly visits at the prison; and (3) an order allowing any competent adult be authorized to transport the children from their mother's house to the prison unit.

The issues raised in the SAPCR were addressed at hearings held August 14, 2018, September 19, 2018, and October 12, 2018. The trial court's final order in the SAPCR (the "SAPCR Order") was signed October 19, 2018. The trial court appointed the parents joint managing conservators of the children. It named Ivonne the parent with the right to designate the children's primary residence, but required residence to be maintained in Webb County. The court ordered Gonzalez pay $0.00 in current or retroactive child and medical support. The court granted Gonzalez's request for non-standard visitation and specified the terms of his access to the children. These hearings and the final order are the subject of issues one through four in Gonzalez's brief.

**B. The August 14, 2018 and September 9, 2018 hearings (relevant to Issues 2 – 4)**

On July 30, 2018, the OAG served Gonzalez with notice the SAPCR was set for trial August 14, 2018. On August 1, 2018, the trial court issued an order for Gonzalez to appear at the hearing by video conference, and on August 9, the court mailed a copy of the notice of hearing to Gonzalez. Gonzalez filed a motion for continuance on August 8, stating he learned of the setting on that day and objecting that he had insufficient time to subpoena witnesses on the issues of access to his children, a "proper" visitation order, and a geographical restriction on the children's residence.

Gonzalez appeared at the hearing by video conference, urged his motion for continuance, and objected to going forward. The lawyer for the OAG stated that in light of Gonzalez's incarceration, it was no longer asking for current or retroactive child or medical support. Over Gonzalez's objection of insufficient notice, Gonzalez testified briefly to the fact of his imprisonment and that he had no wages or income. The trial court found Gonzalez owes $0.00 in retroactive and current support and granted a continuance on the remaining issues in the SAPCR.

On September 19, 2018, the trial court held a final pretrial status conference. Gonzalez again appeared by video conference. During that hearing, Ivonne agreed on the record to

Gonzalez's request for joint managing conservatorship of the children and to his request for a geographic restriction limiting the children's residence to Webb County. The remaining issues were set for trial.

**1. Notice (Issue 2)**

In his second issue, Gonzalez contends the trial court violated his right to due process by proceeding on August 14 over his objection to lack of notice and abused its discretion in denying his motion for continuance. He asserts that due to "improper notice" he was not prepared for the August 14 hearing, and he "misspoke at the hearing regarding if he had any income after he was incarcerated, he should of [sic] said 'YES'."[2]

The record establishes Gonzalez was sent formal notice of the August 14 hearing on July 30 by counsel and on August 9 by the court. *See Edwards v. Phillips*, No. 04-13-00725-CV, 2015 WL 1938873, at *3 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (holding notice of hearing served by opposing counsel is sufficient to give notice). And, in a pleading, Gonzalez admitted he had actual knowledge of the date and time of the hearing on August 8, six days before the hearing. The trial court granted the motion for continuance as to all the issues for which Gonzalez asserted he needed to subpoena witnesses. With respect to the child support issue, the OAG agreed to the relief Gonzalez requested in his answer. We hold Gonzalez's due process rights were not violated and the trial court did not abuse its discretion in going forward on the uncontested child support issue. Moreover, even if the notice were found to be insufficient, the record does not reflect any harm. The only issue decided at that hearing was the uncontested child support issue. There is nothing in the record to support that the alleged insufficient notice of the August 14

---

[2] We note that Gonzalez filed numerous Statements of Inability to Pay Costs in the trial court, including one signed two days after the August 14 hearing. That declaration, made under penalty of perjury stated, consistent with his testimony at the hearing, that Gonzalez had "0" income from any source, assets valued at "0", and debts of $180,000.

hearing resulted in an incorrect judgment or precluded Gonzalez from properly presenting his case on appeal. *See* TEX. R. APP. P. 44.1.

### 2. Location of proceedings (Issues 3 and 4)

In his third and fourth issues, Gonzalez contends the August 14 and September 19 hearings were "null and void" because the trial court violated article I, section 8, and article V, section 7, of the Texas Constitution by holding the hearings outside the courtroom and "closed to the public."

The reporter's records of the two hearings state both hearings took place "in open court or in chambers" in Laredo, Webb County, Texas. There is no evidence of the precise location where the August 14 hearing was held. No objection to the location of the hearing was made during that hearing. However, during the September 19 pretrial hearing, Gonzalez objected:

> And also I object to this proceeding being had. To the so-called open court proceeding in violation of the open court provision under the due process and that my due course of law of the United States and Texas because the public is not allowed in that little chambers, sir. Come on, this is suppose [sic] to be open court proceedings and it goes into chambers --

The trial court responded:

> I will tell you we are in the jury room, that it is an open court, anybody that wants to come in has come in and we've made room for them. So anybody that feels like they want to attend this proceeding is here.

There was no further objection and no indication in the record that either hearing was closed or that any person was excluded from either hearing.

In November 2018, after the SAPCR Order was signed, Gonzalez filed a motion for new trial in which he alleged the August 14 hearing was held in the judge's chambers and that "family members wrote to [him] after the hearing and told him the[y] were not allowed to attend the proceedings." The motion also alleged that family members and witnesses went to the September 19 hearing, but were "not allowed into the meeting room, and they immediately left once the

proceedings started." The allegations in the motion for new trial were not supported by the affidavit of any purportedly excluded person.

Article I, section 8 concerns freedom of speech and press and libel.[3] Gonzalez does not provide any argument or authority to support that there was any violation of article I, section 8, or that he would be entitled to reversal in the event of a violation of that section. *See id.* R. 38.1.

Gonzalez also relies on article V, section 7, of the Texas Constitution, and appears to argue that section is violated by holding proceedings in any place other than the courtroom. We disagree. That section applies only to the district courts. *See* TEX. CONST. art. V, § 7. The case before us was not pending in a district court; it was filed and tried in a statutory county court. Moreover, article V, section 7 requires the court to conduct its "proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law;" it does not prohibit the court from conducting proceedings in chambers or in the jury room. *See id.*; *Cruz v. Hinojosa*, 12 S.W.3d 545, 548–49 (Tex. App.—San Antonio 1999, pet. denied) (holding that because trial was held in the county seat, district court had jurisdiction to conduct part of trial in a private building away from the courthouse, and judgment was not void).

Finally, the record does not reflect the court was "closed" or that any person was excluded from the proceedings. The allegations in the motion for new trial were not supported by any evidence, proffer, or bill of exceptions, and Gonzalez has not challenged the trial court's denial of

---

[3] Article I, section 8 provides:

> Sec. 8. Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

TEX. CONST. art. I, § 8.

a hearing on the motion for new trial or the overruling of the motion by operation of law. To the extent Gonzalez complains he was unable to present witnesses, he suffered no harm because the only issues determined at those two hearings were determined by agreement and Gonzalez received the precise relief he requested in his answer and counterclaim. *See* TEX. R. APP. P. 44.1.

**C. The October 12, 2018 final SAPCR hearing (relevant to Issues 1 and 8)**

The trial court held its final hearing in the SAPCR on October 12, 2018. The parties presented evidence on the issue of visitation from witnesses Ivonne Gonzalez and Gonzalez's brother, Hipolito, and the court interviewed the two minor children in chambers. *See* TEX. FAM. CODE § 153.09(b) (authorizing court, in nonjury trial or hearing, to interview child in chambers to determine child's wishes as to possession and access). At the conclusion of the hearing, Gonzalez asked the court to award him visitation one day a month for two hours and requested that any competent adult be allowed to drive the children to the prison for the visits.

The trial court signed its SAPCR Order on October 19. Consistent with the court's previous interlocutory rulings, the order appointed the parents joint managing conservators of the children, designated Ivonne the parent with the right to designate the children's primary residence, required that residence be maintained in Webb County, and ordered Gonzalez pay $0 in current and retroactive child support. The court also designated Ivonne the sole parent with the power to represent the children in a legal action and, at Gonzalez's request, issued a non-standard visitation order.

The visitation order provides for visitation one Saturday each month at the prison unit where Gonzalez is housed, requires the children be accompanied by either Ivonne or by Gonzalez's adult son, Abelardo G. Gonzalez, Jr., provides that ten-year old Z.A.G. is not required to attend a visit unless either her mother or brother M.A.G. attends as well, and requires Gonzalez to pay the

cost of transportation before each visit, if necessary, not to exceed $250 per visit. The court found each of these requirements and limitations to be in the best interest of the children.

**1. The visitation order (Issue 1)**

In his first issue, Gonzalez contends the terms of the visitation order violate Texas public policy as stated in section 153.001 of the Texas Family Code by requiring him "to pay to see his children" and restricting his access to them.[4]

Trial courts have broad discretion regarding possession and visitation matters concerning children. *In re V.R.G.*, No. 04-17-00583-CV, 2018 WL 842766, at *1 (Tex. App.—San Antonio Feb. 14, 2018, no pet.) (mem. op.). In ordering modified possession, the trial court is to be guided by the standard possession order and may consider the age, developmental status, circumstances, needs, and best interest of the children and the circumstances of the conservators. TEX. FAM. CODE § 153.256. We review the court's order for abuse of discretion. *V.R.G.*, 2018 WL 842766, at *1. "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). "A trial court does not abuse its discretion when some evidence of substantive and probative character supports its decision." *V.R.G.*, 2018 WL 842766, at *1. "We will not reverse the trial court's decision concerning possession and access absent a clear abuse of discretion." *Id.*

**a. Transportation costs**

Gonzalez first argues the trial court improperly required him to pay $250 before he has a visit with his children. He asserts that although the trial court characterized the payment as the cost

---

[4] That section provides that "[t]he public policy of this state is to . . . assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child." TEX. FAM. CODE § 153.001(a)(1). It also provides that "[a] court may not render an order that conditions the right of a conservator to possession of or access to a child on the payment of child support." *Id.* § 153.001(b).

to transport the children, the court "actually was imposing child support" and illegally conditioning his visit on the payment of child support. *See* TEX. FAM. CODE § 153.001(b) ("A court may not render an order that conditions the right of a conservator to possession of or access to a child on the payment of child support.").

Ivonne testified she was financially unable to take the children to visit Gonzalez at the prison. She testified she did not have a functioning vehicle and, although she worked, she did not have sufficient income left over to pay for a rental car and gas. She testified it is a two-to-three-hour drive from her home to the prison. She testified she was not sure of the cost to rent a car, but from her experience, she believed it would cost $250.00 for a car and gas. Finally, she testified she would not need any money if someone loaned her a fueled vehicle. Gonzalez offered the testimony of his brother, Hipolito, who testified he was willing to drive Ivonne and the children to the prison when he was available and that he could arrange to loan Ivonne a car.

The order requires Gonzalez to pay, in advance, "all the transportation costs associated with the visits, not to exceed $250 per visit (this includes cost of car rental if necessary as well as any fuel costs)." As we construe the order, Gonzalez must provide transportation for the visits and pay the cost of such transportation, "if necessary." Gonzalez may do so by arranging to make a reliable vehicle and gas available to Ivonne prior to a scheduled trip or by providing the funds necessary for her to rent a car and pay for gas (not to exceed $250). If Gonzalez does so, Ivonne is then obligated to take the children for a visit. The order does not preclude another person from driving Ivonne and the children to a visit, free of any cost to them, and in that instance, there would not be any transportation costs for Gonzalez to pay. However, as a parent, Ivonne has the right to decline to allow anyone not named in the possession order to drive her and her children to the prison if she believes it would be unsafe or not in the best interest of the children.

The order to provide transportation for visits and to pay the costs of transportation is not an order to pay child support and does not violate section 153.001(b) of the Family Code. The trial court has discretion to order the noncustodial parent to pay transportation costs. *See Grayson v. Grayson*, 103 S.W.3d 559, 563 (Tex. App.—San Antonio 2003, no pet.) (holding trial court had authority to require father to pay the cost of airline tickets and escort fees for children to visit him and did not abuse its discretion in so ordering); *In re D.T.M.*, No. 01-01-00241-CV, 2002 WL 31521151, at *6 (Tex. App.–Houston [1st Dist.] Nov. 14, 2002, no pet.) (mem. op.) (holding trial court did not abuse its discretion in ordering father to pay 100% of travel expenses). The court's order is also consistent with the standard possession order, which requires the noncustodial parent to provide transportation to the visitation and, with exceptions not applicable in this case, authorizes the trial court to require the noncustodial parent to provide transportation back to the primary conservator's residence after the period of possession. *See* TEX. FAM. CODE § 153.316(1), (3)(B). Gonzalez argues that he should not be required to pay the costs because he has no income. However, the record supports that neither party has income sufficient to pay for a monthly car rental. The trial court acted within its discretion to conclude that it would not be in the children's best interest to require Ivonne, who provides all of the support for the children, to incur this extra expense.

### b. Designated adults

Gonzalez next objects to the trial court's findings and orders that it is in the best interest of the children that Ivonne and Abelardo Gonzalez Jr. (appellant's adult son) be the designated adults to take the children to the ordered monthly visits and that ten-year old Z.A.G. not be required to attend unless either her mother or brother, M.A.G. (fifteen years old), attends as well. In particular, Gonzalez contends that his brother, Hipolito, should be able to take the children without Ivonne.

He also asserts that his daughter, Z.A.G., should be able to visit him with either Abelardo Jr. or Hipolito, without the requirement that she be accompanied by Ivonne or M.A.G.

The visitation ordered is to take place at the McConnell Unit of the Texas Department of Criminal Justice Correctional Institutions Division, where Gonzalez is serving a thirty-year felony sentence. Ivonne testified she would agree to let the children travel to the prison without her if they were taken by Abelardo Jr. She testified she was not willing to allow anyone else to take them unless she was present because she was concerned about their safety. On cross-examination, she hesitantly permitted Hipolito to drive them if both children went. Ivonne also testified she did not want her ten-year-old daughter, Z.A.G., traveling to the prison unaccompanied by either her or fifteen-year-old M.A.G. She testified she did not believe it was safe for Z.A.G. and that Z.A.G. had told her "many times" she did not feel safe going alone with either Abelardo Jr. or Hipolito.

Gonzalez's brother, Hipolito, testified he had offered to take the children to the prison a number of times, and he would be willing to do so in the future. However, he also testified that the children do not know him well and he had spent "very little" time with them. Hipolito testified he has a felony conviction for conspiracy for which he served eleven years. Hipolito also expressed concerns for the children's safety, testifying, "I'm afraid for your family" and the children are "under threat" from a "gang member." After hearing the evidence and before ruling, the trial court spoke briefly with the children in chambers.

The best interest of the children is always the primary consideration of the court in determining issues of possession and access. TEX. FAM. CODE § 153.002. The trial court found it was in M.A.G. and Z.A.G.'s best interest that Ivonne and Abelardo Jr. be the adults designated to transport the children and that Z.A.G. would not be required to attend a visit without either her mother or M.A.G. accompanying her. The trial court had discretion to consider Ivonne's concerns about the children's safety, Z.A.G.'s apprehension about traveling without her mother or M.A.G.,

and the fact Hipolito is a convicted felon whom the children do not know well in determining what is in their best interest. We conclude the court did not abuse its discretion. *See id.*; *Capello v. Capello*, 922 S.W.2d 218 (Tex. App.—San Antonio 1996, no pet.) (holding trial court had discretion to consider mother's concern for safety and well-being of child and did not abuse its discretion by limiting the adults designated to transport child to visits).

### c. Other complaints

Gonzalez also complains the order requires the visits be held at the McConnell prison unit, asserting he will lose his visitation rights if he is moved to another unit. Nothing in the record suggests that a move to another unit is planned. Because a move to another prison unit would impact the cost and feasibility of travel, the trial court did not abuse its discretion in ordering the visits to occur at the McConnell Unit. If Gonzalez is moved, he may file a motion to modify. Finally, Gonzalez complains the order unreasonably limits visits to two hours on Saturdays, even though visits are allowed for four hours on both Saturdays and Sundays. The order does not provide a limitation on how long the visits may be,[5] and the order stating visits occur on Saturdays is supported by testimony that both Ivonne and M.A.G. are involved in church activities on Sundays.

The record supports the terms of the visitation order are in the children's best interest and do not violate Texas public policy.

### 2. Denial of a bench warrant (Issue 8)

In his eighth issue, Gonzalez contends the trial court abused its discretion by denying his motion for a bench warrant to personally appear at the October 12, 2018 hearing on visitation.

Before the September pretrial hearing, Gonzalez filed a motion for a bench warrant, seeking to appear in person at the final SAPCR hearing. At the conclusion of the pretrial hearing,

---

[5] We note that Gonzalez asked the court to order two-hour visitations in his closing argument to the court.

the court noted the sole remaining issue to be tried in the SAPCR was visitation, an issue for which Gonzalez was not entitled to a jury trial. The court ruled Gonzalez could appear at the hearing by videoconference, but denied his motion for a bench warrant. Gonzalez reurged his request to appear personally in motions filed after the pretrial and at the October hearing. The trial court denied the motions.

Although inmates have a right of access to the courts, they do "not have an absolute right to appear in person in every court proceeding." *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003). An inmate requesting a bench warrant must supply factual information by which the trial court may assess the necessity of his appearance. *Id*. at 166. If a sufficient motion is filed, the trial court weighs the inmate's ability to effectively access the court against the need to protect the integrity of the correctional system and, in doing so, considers the following factors: "the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible, noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the prisoner's presence is important in judging his demeanor and credibility; whether the trial is to the court or a jury; and the prisoner's probability of success on the merits." *Id.* at 165-66. We review the trial court's ruling on the bench warrant request for an abuse of discretion. *Z.L.T.*, 124 S.W.3d at 165.

With respect to the visitation issue, the sole issue to be heard by the court,[6] Gonzalez's motion asserted he needed to be physically present so he could see the entire courtroom, testify and examine witnesses, and offer documents and examine witnesses about them. Gonzalez

---

[6] Gonzalez's motion was premised on his contention he was entitled to a jury trial and much of the motion addressed issues that had already been resolved in the SAPCR or that concerned his third-party actions.

attached to his motion copies of correspondence with Ivonne about which he wished to question her. In addition, Gonzalez asserted his personal appearance would not place an undue burden on the prison system because the distance between the prison and the courthouse is no more than the trial judge would have to travel, the Webb County Sherriff's office makes weekly trips to the prison and could transport him, and there would be minimal need for courtroom security because he is a low-risk prisoner.

To support his argument the trial court abused its discretion by denying the motion, Gonzalez argues he was denied effective access to the court. He first asserts that appearing by videoconference afforded him an insufficient view of the courtroom. He complains the witnesses were required to stand in front of the bench to testify, but does not contend he, the court, or the witnesses could not see or hear each other. He also complains he could not see whether the witnesses he subpoenaed were present. However, Gonzalez need only to have called the witnesses to testify to determine if they were present; if the witness were not present, Gonzalez could then have taken steps to enforce the subpoena.[7]

Gonzalez next argues that because he was not present in the courtroom, he was unable to review and cross-examine witnesses about documentary evidence. We disagree. The trial court could have reasonably determined that because Gonzalez knew long before the hearing that he would be appearing by videoconference, he had a reasonable opportunity to send any documentary evidence to the court to be marked as exhibits. Additionally, Gonzalez could have referred the witness to copies of the documents that were in the court's file, attached to his motion for a bench warrant, or shown the document to the witness on the video screen. Gonzalez specifically complains he was unable to have Ivonne authenticate and testify about the contents of a letter she

---

[7] Gonzalez also contends his appearance by videoconference prevented him from knowing the witnesses were not sworn. However, the record affirmatively reflects each witness was sworn.

wrote. However, Gonzalez had no actual need for the letter at the hearing because when he cross-examined Ivonne, she admitted making the statements made in the letter. Gonzalez also complains he was unable to review a document brought to court by a Webb County assistant county attorney pursuant to Gonzalez's subpoena. The subpoenaed document was a brief from a different, non-SAPCR, case that Gonzalez had quoted in his third-party petition in this case. Gonzalez argued to the court the witness's testimony and the document were relevant to the claims in his third-party petition. After ascertaining the witness had no knowledge of facts relevant to the issue of visitation, the trial court sustained the OAG's objection to the witness and to admission of the brief into evidence. Gonzalez was not harmed by his inability to review a document he already had and that was not relevant to the proceeding.

Finally, Gonzalez complains that his absence from the courtroom prevented him from properly urging his "motion to have [Ivonne] bring minor children to testify." The record reflects the children were present at the hearing and he was able to see and speak with them. Gonzalez did not call either of them as a witness.

In evaluating Gonzalez's request for a bench warrant, the trial court could also have considered the administrative and personnel costs of transferring Gonzalez from State to County custody, transporting him to and from Webb County, and housing him in Webb County. In addition, the court could properly consider the cost of security personnel required both for the transfer and in the courthouse. Although Gonzalez contended in his motion that no extra security would be required because he is not a flight risk, Gonzalez asserted in the motion that threats had been made on his life and those of his children, suggesting his presence would necessitate extra security.

In light of the limited issue being tried to the bench, it was within the trial court's discretion to conclude that neither Gonzalez's asserted need to see the entire courtroom nor to physically

hand documents to witnesses outweighed the burden on the correctional system of transferring Gonzalez to Webb County for the hearing. By allowing Gonzalez to appear at the hearing by videoconference, instead of by affidavit or telephone, the trial court struck a fundamentally fair balance. We hold the trial court did not abuse its discretion in denying Gonzalez's request for a bench warrant and Gonzalez was not prevented from effectively presenting his case. We overrule his eighth issue.

## II. THE THIRD-PARTY ACTIONS

### A. Background

Gonzalez, on his own behalf and purportedly on behalf of his minor children, filed third-party claims against a district court judge, two Laredo police department employees, and a Webb County deputy sheriff, all in their official capacities. Gonzalez alleged the public officials had intentionally and wrongfully failed to disclose to him information that affects the well-being, safety, and support of his minor children. He sought declaratory and injunctive relief to compel the officials to disclose specific information about past and ongoing criminal investigations and to answer Gonzalez's further unspecified questions. The trial court dismissed the third-party claims in three separate orders. In addition, the court awarded $300 in sanctions in favor of Judge Lopez. These orders are the subject of Gonzalez's issues 5 through 7.

### B. Claims against Judge Lopez and the City of Laredo police officers (Issues 6 and 7)

In his sixth and seventh issues, Gonzalez complains about the trial court's dismissal of his third-party actions against Judge Lopez and City of Laredo police officers Lichtenberger and Garcia. Because Gonzalez challenges these orders on essentially the same grounds, we discuss these issues together.

**1. The trial court's authority to act**

The OAG filed the original child support case in September 2017 in Webb County Court at Law Number 2, where the Honorable Victor Villarreal was and is the presiding judge. The case was automatically referred to the Title IV-D Associate Judge, Belinda Mendez, who presided over several hearings in the SAPCR. The third-party defendants were served in December 2017, and Judge Lopez and the City defendants filed their motions to dismiss. The dismissal orders were signed in January 2018, by Judge Villarreal. Gonzalez contends that because there is no order in the record referring the case from Judge Mendez to Judge Villarreal, he "lacked jurisdiction to issue and sign any order's [sic] while Assoc. Judge Mendez was still presiding over the case."

We disagree. "More than one judge . . . may exercise authority over a single case." *Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 41 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Moreover, a "statutory county court judge may hear and determine a matter pending in any district or statutory county court in the county . . . [and] may sign a judgment or order in any of the courts regardless of whether the case is transferred." TEX. GOV'T CODE § 74.094. Gonzalez's case was pending in Judge Villarreal's court. The absence of a referral order from Judge Mendez did not deprive Judge Villarreal of jurisdiction and did not render his orders void.

**2. Application of Chapter 14 of the Civil Practice and Remedies Code to the third-party claims**

Judge Lopez and the police officers filed motions to dismiss and pleas to the jurisdiction pursuant to chapter 14 of the Texas Civil Practice and Remedies Code. Gonzalez asserts the trial court erred in granting the motions because Chapter 14 does not apply to this case.

The Texas Legislature enacted Chapter 14 to govern actions filed by prison inmates who file an affidavit or unsworn declaration of inability to pay cost. TEX. CIV. PRAC. & REM. CODE § 14.002. "Its primary purpose was to provide trial courts with a mechanism to reduce the toll of

frivolous inmate litigation on judicial and state resources." *Lopez v. Serna*, 414 S.W.3d 890, 896 (Tex. App.—San Antonio 2013, no pet.). Chapter 14 authorizes the trial court to dismiss a cause of action before service and without a hearing if the court finds the claim is frivolous. TEX. CIV. PRAC. & REM. CODE §§ 14.001(1), 14.003. Chapter 14 applies to all actions brought by an inmate except for those brought under the Family Code. *Id.* § 14.002.

The original claim in this case was brought by the OAG under the Family Code, an action to which Chapter 14 did not apply. *See id.*; TEX. FAM. CODE § 231.101(a). Gonzalez's cross-claim against Ivonne for conservatorship and possession was also an action brought under and authorized by the Family Code, and was not subject to Chapter 14. *See* TEX. FAM. CODE § 102.001; *see also id.* § 101.032(a) (defining a "suit affecting the parent-child relationship"). However, Gonzalez's third-party actions against public officials were not actions brought under the Family Code. The third-party actions, accompanied by a declaration of inability to pay costs, sought to compel public officials to disclose information regarding past and ongoing criminal investigations. Gonzalez has cited no authority that the claims he alleged or the relief he sought are either authorized by or brought under the Family Code. Gonzalez's claims against the public officials do not become actions "brought under the Family Code" merely because he asserts that the relief he seeks will somehow assist him to comply with his parental duties. We hold Chapter 14 applies to the third-party actions Gonzalez filed in this case.

### 3. Chapter 14 dismissal for lack of jurisdiction

Gonzalez's third-party claims sought to compel the disclosure of information about a bomb threat at the Webb County courthouse during his 2010 criminal trial and about later threats alleged to have been made against Gonzalez and his children. In his brief, Gonzalez characterizes his claims as being brought under the Uniform Declaratory Judgments Act for prospective relief and "only to gain information to aid in a current police investigation on threats to the minor-children."

Although Gonzalez expressly pleaded the information he sought is "not related to [his] criminal proceedings or records," he suggests the information will also help him to prove he was "wrongfully convicted" and thus facilitate his being released from prison so he can support his children. The defendants' Chapter 14 motions asserted the claims were frivolous for several reasons, including that they are barred by sovereign immunity and the trial court therefore lacked jurisdiction over them.[8]

Chapter 14 authorizes a trial court to dismiss an inmate's claim that is frivolous because it has no arguable basis in law. TEX. CIV. PRAC. & REM. CODE § 14.003(a)(2), (b)(2). A case barred by sovereign immunity has no arguable basis in law, is frivolous, and is properly dismissed under Chapter 14. *Harvey v. Mayer*, No. 13-17-00296-CV, 2018 WL 3470597, at *2 (Tex. App.—Corpus Christi July 19, 2018, pet. denied) (mem. op.); *see Lopez*, 414 S.W.3d at 895 (holding court may rely on Chapter 14 to dismiss inmate's claim if petition alleges facts showing that sovereign immunity would, in all likelihood, bar claim). We review de novo whether immunity deprived the trial court of jurisdiction. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011).

Sovereign immunity deprives Texas courts of subject matter jurisdiction over any suit against the state unless the state expressly consents to suit. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties [and] cities." *Id.* This immunity may be waived only by the legislature, either by statute or by resolution. *Texas Nat. Res. Conservation*

---

[8] They also pleaded the claims were frivolous because they are barred by res judicata, collateral estoppel, absolute judicial immunity, and official immunity, and that Gonzalez failed to state a claim and was improperly attempting to undermine a criminal conviction in a civil suit. Because we hold the third-party claims were properly dismissed under Chapter 14 because they are barred by sovereign and governmental immunity, we do not address the other grounds for the motions.

*Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002). The same immunity generally extends to a public official who is sued in his official capacity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009); *see Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011) ("[A] suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted *ultra vires*."). Gonzalez asserts Judge Lopez and Officers Lichtenberger and Garcia, sued in their official capacities, are not immune from his suit because he seeks only prospective relief pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, the Uniform Declaratory Judgments Act ("DJA") and, alternatively, because the officials' failure to disclose the information he seeks was *ultra vires*. We disagree.

There is no general right to sue a governmental entity for a declaration of rights. *Sawyer Trust*, 354 S.W.3d at 388. The DJA waives immunity for claims challenging the validity of ordinances or statutes, but "it is not a general waiver of sovereign immunity." *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 37.006(b). "[T]he DJA does not alter a trial court's jurisdiction. Rather, the DJA is merely a procedural device for deciding cases already within a court's jurisdiction." *Sawyer Tr.*, 354 S.W.3d at 388 (citations and quotation marks omitted). Gonzalez does not challenge the validity of any ordinance or statute and does not cite to any legislative waiver of immunity for his third-party claims. Because the legislature has not waived immunity for Gonzalez's third-party claims, he can proceed only if the third-party defendants' actions in failing to produce the information he seeks were "*ultra vires*—without state authority." *See Hall v. McRaven*, 508 S.W.3d 232, 234, 238 (Tex. 2017) (holding no waiver of immunity for regent's suit for declaratory and injunctive relief to compel chancellor to produce documents, and suit could proceed only if chancellor's actions were *ultra vires*).

An *ultra vires* action requires a plaintiff to "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d

at 372. A government officer acts "without legal authority" "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hall*, 508 S.W.3d at 238. A "ministerial act" is one for which "the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id.*

To pursue an *ultra vires* claim, Gonzalez therefore must allege these public officers have a mandatory duty to produce the information or that they have exceeded their legal authority by failing to produce it. Gonzalez pled only that because the information is material to the children's well-being and support, he is "entitled to it under the Family Code." However, Gonzalez has not cited us to any provision in the Family Code or any other law that imposes a ministerial duty on these officers to provide Gonzalez the information he seeks.[9] Nor has he alleged that Judge Lopez, in conducting Gonzalez's criminal trial, or the police officers, in conducting any investigation, "acted without legal authority." *See Heinrich*, 284 S.W.3d at 372-73. He therefore failed to allege viable *ultra vires* claims against these third-party defendants. *See Hall*, 508 S.W.3d at 243-44.

The trial court correctly concluded Gonzalez's third-party claims against Judge Lopez and Officers Garcia and Lichtenberger had no arguable basis in law and were frivolous because the claims are barred by sovereign and governmental immunity. The court did not err in dismissing the third-party claims under Chapter 14 for lack of jurisdiction. Gonzalez additionally complains that his claims against Officers Garcia and Lichtenberger should not have been dismissed with prejudice. We disagree. A dismissal with prejudice is appropriate when a trial court lacks subject matter jurisdiction because of the sovereign immunity bar and the plaintiff could not amend the pleading to remedy the jurisdictional defect. *Sykes*, 136 S.W.3d at 639.

---

[9] Gonzalez does not allege he sought, was denied, or is entitled to any of the information he seeks under the Texas Public Information Act. *See* TEX. GOV'T CODE § 552.001 *et seq.*; *see also id.* § 552.028(a) (providing that a "governmental body is not required to accept or comply with a request for information from an individual who is imprisoned or confined in a correctional facility").

**4. The award of sanctions**

The trial court's January 4, 2018 order dismissing Gonzalez's claims against Judge Lopez for lack of jurisdiction included an award of attorney's fees as sanctions in the amount of $300. Gonzalez challenges that award.

Judge Lopez moved for an award of attorney's fees as sanctions pursuant to Texas Rule of Civil Procedure 13 and Chapter 10 of the Texas Civil Practice and Remedies Code. The motion was filed December 20, 2017, and the certificate of service states it was mailed to Gonzalez on the same date. Gonzalez prepared a response in which he stated he received the motion on December 27 and was placing his response in the prison unit mailbox on December 29. The response contains Gonzalez's explanation of why he believed the suit was not frivolous, in bad faith, or for purposes of harassment and should not be sanctioned. The response was received and filed by the district clerk on January 10, six days after the trial court signed the sanctions order. The trial court's January 4 order stated the sanction was granted pursuant to Rule 13 and section 10.001(2) of the Civil Practice and Remedies Code, and contains a finding that "this suit has no arguable basis in law and is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

Gonzalez filed a timely motion for new trial and motion to reconsider, vacate, or modify the order, in which he complained the motion was granted before he had an adequate opportunity to respond. The motion incorporated and attached a copy of his response. The motion for new trial was overruled by operation of law, and there is no indication in the record the trial court ever reviewed or considered Gonzalez's response to the motion for sanctions. We review a sanctions order for abuse of discretion. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied).

### a. Rule 13

Gonzalez argues the sanction cannot be upheld under Rule 13 of the Texas Rules of Civil Procedure because the trial court did not hold an evidentiary hearing and the record does not contain evidence to support the trial court's implied findings of bad faith or harassment. We agree. Rule 13 authorizes the trial court to impose sanctions on a party who signs a pleading that is either: (1) groundless and brought in bad faith; or (2) groundless and brought to harass. TEX. R. CIV. P. 13; *Tex.-Oh. Gas, Inc. v. Mecom*, 28 S.W.3d 129, 136 (Tex. App.—Texarkana 2000, no pet.). Courts must presume that pleadings are filed in good faith, and the burden is on the party moving for sanctions to overcome this presumption. *Id.* at 139; TEX. R. CIV. P. 13. "In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must measure a litigant's conduct at the time the relevant pleading was signed. Moreover, the trial court must examine the facts available to the litigant and the circumstances existing at the time the pleading was signed. The plaintiff's petition alone cannot establish that a case was brought in bad faith or to harass." *Mecom*, 28 S.W.3d at 139 (internal citations omitted). "Rule 13 generally requires that the trial court hold an evidentiary hearing to make a determination about the motives and credibility of the person signing the petition;" however, "[u]nder some circumstances, the trial court may be able to make such a determination by taking judicial notice of items in the case file." *Id.* (internal citations omitted).

The trial court did not hold an evidentiary hearing on Judge Lopez's motion for sanctions and the record does not reflect the trial court took judicial notice of anything in the court's file. Because the trial court had no evidence upon which to base a finding that Gonzalez filed his third-party petition in bad faith or to harass, it would have been an abuse of discretion to sanction Gonzalez pursuant to Rule 13.

### 2. Chapter 10

Gonzalez argues the sanction is also not supported by Chapter 10 of the Texas Civil Practice and Remedies Code because he was not given a reasonable opportunity to file a response as required by due process and section 10.003.[10] A party subject to sanctions has a constitutional right to due process, including a fair and meaningful opportunity to be heard. *Kugle v. DaimlerChrysler Corp.*, 88 S.W.3d 355, 361 (Tex. App.—San Antonio 2002, pet. denied). The opportunity to be heard required by due process "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *see Enriquez v. Livingston*, 400 S.W.3d 610, 617 (Tex. App.—Austin 2013, pet. denied) (due process does not require an oral hearing on a motion but only an opportunity to respond at a meaningful time and in a meaningful manner). Gonzalez contends that the trial court's taking the motion under submission and deciding it just fifteen days after it was filed (with intervening Christmas and New Year holidays) did not, under the circumstances, afford him a meaningful and reasonable opportunity to respond.

Judge Lopez responds that Gonzalez should have requested additional time to respond. However, the Judge's motion did not contain a fiat setting a date for hearing and the trial court had not sent an order setting a submission date. Gonzalez promptly filed his response two days after receiving the motion for sanctions, with no reason to believe an extension of time was necessary. Judge Lopez also appears to argue that the opportunity to respond was "reasonable" because Gonzalez was able to prepare and "file" (place in the prison mailbox) his response before the trial court took the motion under submission. In other words, Gonzalez was "heard" because his response was "filed" before submission. We disagree. To comport with due process, the

---

[10] Gonzalez also argues the trial court failed to sufficiently specify the sanctionable conduct as required by section 10.005. *See* TEX. CIV. PRAC. & REM. CODE § 10.005. Gonzalez waived the specificity complaint by failing to raise it in the trial court. *See Mecom*, 28 S.W.3d at 135; *Bravenec v. Flores*, No. 04-11-00444-CV, 2013 WL 1149418, at *3 (Tex. App.—San Antonio Mar. 20, 2013, no pet.) (mem. op.).

opportunity to respond must be meaningful, which we construe to mean that the respondent must have a reasonable opportunity to actually place his response before the court for its consideration in deciding the motion.

That did not occur here. In this case, the trial court was aware the respondent was an inmate who did not have access to the clerk's office or to a United States mailbox. A cursory review of the pleadings Gonzalez had filed in this case before January 2018 reveals that it regularly took between five and ten days after Gonzalez placed his filings in the prison mailbox for them to be file-stamped in the clerk's office and available to the judge. Gonzalez could not have done more to actually place his response before the court. Under the circumstances of this case, we conclude Gonzalez was denied a reasonable and meaningful opportunity to respond. Accordingly, we reverse the order awarding sanctions and remand for a new sanctions hearing.

**C. Claim against Webb County Deputy Sheriff Ponce Trevino (Issue 5)**

The final issue concerns Gonzalez's third-party claim against Ponce Trevino in his official capacity as a Webb County Deputy Sheriff. In this issue, Gonzalez argues that a June 4, 2019 order dismissing the claim against Trevino for lack of jurisdiction is void and that the final judgment is actually a default judgment in Gonzalez's favor that was signed in January 2019.

**1. Background**

Gonzalez's third-party petition included the same claim for declaratory and injunctive relief against Webb County Deputy Sheriff Ponce Trevino in his official capacity as that he filed against Judge Lopez and the City of Laredo police officers. However, Deputy Trevino did not file an answer, and beginning in February 2018, Gonzalez filed several motions for default judgment. On October 17, 2018, Judge Harle signed an order that disposed of many of Gonzalez's pending motions. One paragraph of the order stated:

11. REQUEST FOR NO ANSWER DEFAULT JUDGMENT AGAINST "THIRD-PARTY DEFENDANT PONCE TREVINO": DISMISSED AS COURT LACKS PERSONAL AND SUBJECT MATTER JURISDICTION OVER THIS ON-PARTY AND THIS UNRELATED MATTER.

Two days later, Judge Harle signed the SAPCR Order. Gonzalez timely filed a motion for new trial and a notice of appeal. He also filed a petition for a writ of mandamus in this court, seeking to compel the trial court to rule on his motion for default judgment. Neither the trial court nor Deputy Trevino filed a response to the petition, and on December 19, 2018, the writ was conditionally granted.[11]

On January 11, 2019, the new judge assigned to the case[12] signed a default judgment, which stated in its entirety:

> The Third-party Defendant, Ponce Trevino, having failed to appear in this action, and having been duly served with citation on December 28, 2017 by personal service, has failed to answer as required under the Texas Rules of Civil Procedure. The Third-party Plaintiff has filed a proper motion and a declaration in accordance with Texas Rules of Civil Procedure Rule 239 requesting default judgment be rendered.
>
> IT IS THEREFORE ORDERED that default judgment is hereby entered in favor of Third-party Plaintiffs, and against Third-party Defendant Ponce Trevino and the relief requested by Third-party Plaintiff is GRANTED.
>
> The Clerk shall send a certified copy of this Order to all parties and counsel of record.
>
> Signed on January 11, 2019.

Thereafter, Gonzalez began sending demands to Deputy Trevino to obtain the information he sought, and Gonzalez filed motions to enforce the judgment and for contempt.

---

[11] This court was not provided a copy of the October 17, 2018 order as part of the mandamus record or by respondent or any of the real parties in interest.

[12] Associate Judge Mendez, Judge Villarreal, and Judge Harle had all recused from the case following motions by Gonzalez. On November 2, 2018, the Texas Supreme Court assigned Judge Missy Medary, an active District Judge, to service to the County Court at Law No. 2 of Webb County, to adjudicate any remaining matters in the case.

In April 2019, Deputy Trevino filed a special appearance and answer, asserting there had not been proper service of process, the trial court lacked personal and subject matter jurisdiction, and the default judgment was void. Judge Missy Medary held a hearing in May, and issued an order on June 4, 2019. The June 2019 order granted the special appearance, set aside the default judgment, ruled the trial court lacked personal jurisdiction and lacked subject matter jurisdiction over the claim against Deputy Trevino, dismissed the claim, and denied Gonzalez's motions. Gonzalez amended his notice of appeal to include the June 4, 2019 order, and in his fifth issue, he argues the order is void, making two distinct arguments.

**2. Judge in another county**

Gonzalez first argues the trial court's June 4, 2019 order violates article V, section 7, of the Texas Constitution and is void because Judge Medary conducted the hearing that resulted in the order by telephone from her courtroom in Corpus Christi. We disagree.

Article V, section 7, governs judicial districts, district judges, and where district courts hold their proceedings, and provides in part that "[t]he Court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law." TEX. CONST. art. V, sec. 7. The underlying case was pending in a statutory county court, to which article V, section 7 does not apply. Although Judge Medary is an active district court judge, she was assigned by the Chief Justice of the Supreme Court of Texas to provide service to the County Court of Law No. 2 and, as such, she had the powers and duties of the judge of the court to which she was assigned. *See* TEX. GOV'T CODE § 74.059.

Further, section 74.094(e) of the Texas Government Code expressly allows a judge who has jurisdiction over a suit pending in one county to conduct any of the judicial proceedings except the trial on the merits in a different county unless a party objects. TEX. GOV'T CODE §74.094(e). By virtue of her assignment, Judge Medary had jurisdiction over the suit. The reporter's record

reflects the hearing was called in the courtroom of the Webb County Court at Law No. 2, counsel for Deputy Trevino appeared in person, and both Gonzalez and an Assistant Attorney General appeared by telephone. The hearing was not a trial on the merits. Judge Medary announced that she was conducting the hearing by telephone from her courtroom in Corpus Christi. Gonzalez did not object.[13] We overrule Gonzalez's complaint.

### 3. Plenary power

Gonzalez also argues the trial court lacked jurisdiction to render the June 4, 2019 order because its plenary power over the default judgment expired thirty days after it was signed.[14] We disagree because we conclude the default judgment was not a final judgment, and Judge Medary therefore retained jurisdiction over the case on June 4, 2019.

An order rendered without a conventional trial on the merits, such as a default judgment, is not presumed to be final. *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829 (Tex. 2005) (orig. proceeding). Such an order may become final if it either contains language stating "in effect that the order is final and disposes of all parties and claims and is appealable" or if "the order actually disposes of all claims and parties." *Id.* at 829-30. The January

---

[13] Gonzalez asserts in his brief that he "properly objected." However, the objection he cites to was made earlier in the proceeding, before Judge Medary disclosed she was in Corpus Christi. Gonzalez objected "to these proceedings," specifically that his witnesses were not present and to the proceedings being closed and not being held in open court. Deputy Trevino's counsel stated for the record that he was in the courtroom with the doors open and that Mrs. Gonzalez and a child were present. Gonzalez then asked the judge where she was located. She responded, "I am in Corpus Christi, I am in my courtroom at this time. I am on a speaker phone with everybody, including yourself. The case itself is being heard in an open courtroom in another jurisdiction from me." Gonzalez did not object at that time or at any time later in the hearing to Judge Medary not being physically present in Laredo. *See* TEX. R. APP. P. 33.1(a) (requiring preservation of a complaint in the trial court through timely request, objection, or motion stating specific grounds for ruling sought).

[14] Deputy Trevino does not address this issue because he contends the trial court's October 17, 2018 one sentence order dismissing the request for a default judgment for lack of jurisdiction was a disposition of Gonzalez's claim against him. Deputy Trevino contends that disposition became final two days later when the trial court signed the SAPCR Order disposing of the remaining issues and parties in the case. We do not decide whether the October 17, 2018 order disposed of Gonzalez's claim against Deputy Trevino because, even if it did, Gonzalez's timely filed motion for new trial extended the trial court's plenary power such that the trial court had jurisdiction to modify the disposition by granting the default judgment on January 11, 2019. *See* TEX. R. CIV. P. 329b(e).

11, 2019 default judgment was not granted after a trial on the merits and does not state that it is a final appealable order or that it disposes of all claims and parties. The issue then is whether in the context of a claim seeking declaratory and injunctive relief, a judgment that only orders "default judgment is hereby entered" and states "the relief requested . . . is granted" actually fully disposes of the claims.

To be final, the judgment must determine the rights of all parties and dispose of all issues in a case, so that no future action by the court will be necessary to settle the entire controversy. *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 35 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). "The judgment must conclude the controversy between the parties, must be definite, and must protect the rights of the litigants." 6 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEX. CIV. PRAC. § 11:3 (2d ed. rev. 2019). An order that does not actually adjudicate the matters in issue is not final. Thus, "[a]n order that merely grants a motion for judgment is in no sense a judgment itself. It adjudicates nothing." *Naaman v. Grider*, 126 S.W.3d 73, 74 (Tex. 2004) (per curiam). Likewise, an order stating that a motion for summary judgment "is hereby granted" does not dispose of claims and is not final because it does not purport to declare the legal effect of granting the motion; it contains no decretal language. *See Frausto v. RC Indus. LLC*, 605 S.W.3d 54, 56 (Tex. App.—San Antonio 2020, no pet.); *White v. CBS Corp.*, 996 S.W.2d 920, 922 (Tex. App.—Austin 1999, pet. denied).

Here, the court "ordered" a "default judgment . . . entered . . . against [Deputy Trevino]" and "the relief requested by [Gonzalez] granted." At most, the trial court rendered an interlocutory default judgment on liability. It did not adjudicate the terms of the judgment Gonzalez was entitled to by reason of the default. The relief Gonzalez requested was declaratory and injunctive relief. But the default judgment did not declare any issues of fact or law and it did not specify what acts were enjoined. We hold the January 2019 default judgment did not dispose of Gonzalez's claim

against Deputy Trevino because it did not adjudicate or decree the relief to be awarded, and therefore was not final. *See Sawyers v. Carter*, No. 01-14-00870-CV, 2015 WL 3981313, at *2-3 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op.) (holding default judgment was interlocutory and did not dispose of claims for injunctive relief where it stated only that "Motion for Default Judgment on an injunction against unreasonable and excessive noise and dust created by the riding of large dirt bikes on Defendants' property is granted" and "Motion for Default Judgment on an injunction against moving Defendants' crating business, Pax Crate and Freight, Inc., to Defendants' Margerstadt Road property is granted"); *Henshaw v. Tex. Workforce Comm'n-Civil Rights Div.*, No. 05-12-01006-CV, 2012 WL 4795659, at *1 (Tex. App.—Dallas, Oct. 9, 2012, no pet.) (mem. op.) (holding order that granted motion for summary judgment did not dispose of claims and was not final because it did not state it was final and did "not contain any decretal language specifying what damages, attorney's fees, or injunctive relief was awarded").

Although the January 2019 default judgment adjudicated Gonzalez had a right to a default judgment, it did not adjudicate or decree what relief Gonzalez was awarded. The judgment was therefore interlocutory and the trial court retained jurisdiction to modify it, which it did on June 4, 2019, when it set the default judgment aside and dismissed Gonzalez's claim. We therefore overrule Gonzalez's fifth issue.

### III. Conclusion

For the reasons set forth above, we reverse the award of sanctions against Gonzalez and remand to the trial court solely for a new hearing on Judge Lopez's motion for sanctions. In all other respects, we affirm the trial court's judgment rendering the SAPCR Order and dismissing the third-party claims against the Hon. Jose A. Lopez, Judge of the 49th Judicial District Court of Webb County, City of Laredo Police Department Officer Nicolas Lichtenberger, City of Laredo

Police Department Officer Robert Garcia, and Webb County Sheriff's Department Deputy Ponce Trevino for lack of subject matter jurisdiction.

Luz Elena D. Chapa, Justice